BEATTYS v. STRAITON et al.

(Supreme Court, Appellate Division, First Department.   January 6, 1911.)

1. APPEAL AND ERROR (§ 760*)—BRIEFS—REFERENCE TO RECORD.
    Statements of facts in a brief should make folio references to the record.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3095; Dec. Dig. § 760.*]

2. APPEAL AND ERROR (§ 172*)—REVIEW—THEORY FOLLOWED BELOW.
    On appeal from a judgment adjudging an agreement void as to creditors, respondent is not entitled to assert invalidity of the agreement as a preference within the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) where that question was not litigated below.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1070–1078; Dec. Dig. § 172.*]

3. PARTNERSHIP (§ 245*)—DEATH OF MEMBER—TITLE OF SURVIVOR.
    The legal title to firm assets passes to the survivors on death of a member.
    [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 514–518; Dec. Dig. § 245.*]

4. FRAUDULENT CONVEYANCES (§ 88*)—CONSIDERATION FOR AGREEMENT.
    Where testator gave his interest in a firm to his associates, charged with a payment to his daughter, continuance of the firm business by the associates for three years after testator's death implied an acceptance of the legacy as burdened with the charge; affording consideration for an agreement whereby one of the associates assigned certain interests to the daughter to secure payment of a sum which they agreed she should receive in release of her claim against the firm assets.
    [Ed. Note.—For other cases, see Fraudulent Conveyances, Dec. Dig. § 88.*]

5. LIMITATION OF ACTIONS (§ 100*)—FRAUDULENT CONVEYANCES.
    Under the six-year limitation prescribed by Code Civ. Proc. § 382, an action brought May 1, 1909, by a trustee in bankruptcy to avoid an assignment made September 29, 1900, as being fraudulent as to creditors, was barred where plaintiff was chargeable with knowledge of the assignment and the consideration for it as early as December 17, 1900, and where the assignor was adjudged a bankrupt October 15, 1900.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

6. LIMITATION OF ACTIONS (§ 100*)—ACCRUAL—TIME.
    The six-year limitation under Code Civ. Proc. § 382, against suits to avoid an assignment as in fraud of creditors, does not begin to run until plaintiff acquires knowledge of facts necessary to maintain suit; mere

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

surmise or suspicion being insufficient, but one cannot disregard facts upon which a reasonable man would act.

[Ed. Note.—Fo other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

7. LIMITATION OF ACTIONS (§ 195*)—EXCEPTIONS—BURDEN OF PROOF.

One relying on the exception provided by Code Civ. Proc. § 412, to actions barred within six years under section 382 must bring himself within it.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 711–716; Dec. Dig. § 195.*]

Dowling and Laughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by George D. Beattys, Martin V. Cook's trustee in bankruptcy, against Wallace Straiton and another, committee of Christine Straiton and Martin V. Cook. Judgment for plaintiff, and defendants appeal. Reversed, and new trial granted.

See, also, 125 N. Y. Supp. 1112.

Appeal from a judgment adjudging fraudulent and void as to the plaintiff and the creditors of the defendant Martin V. Cook, the bankrupt, a certain agreement made between him and the defendant Christine Straiton. Valentine Cook, Sr., who died on December 9, 1897, was a member of the firm of Valentine Cook & Son, composed of himself, his son, the said Martin V. Cook, and his son-in-law, Arthur E. Helmrich, the interest of said son and son-in-law being limited to the profits of the business. By his will, he bequeathed to them in equal shares all his right, title, and interest "in the firm of Valentine Cook & Son, and especially in the good will, stock, machinery, assets, books, accounts thereof," and all machinery, belonging to him, being used by the said firm, subject to a charge of $15,000 and interest at the rate of 5 per cent. which he directed them to pay in equal shares to his daughter, the said defendant Christine Straiton, and to two other persons named, five years after his death. He bequeathed and devised his residuary estate to his executors in trust during the lives of two grandchildren, named, or until either should attain his majority, remainder to his children. After the death of said testator, the said Martin Cook and Arthur E. Helmrich took charge of the business of Valentine Cook & Son and conducted it until the death of the latter in April, 1898, and thereupon, the former took charge and continued the business until October 15, 1900, when he was adjudged a bankrupt.

On the 29th of September, 1900, the instrument in question was executed and delivered. By it, the defendant, Christine Straiton, in terms sold and assigned to the defendant, Martin V. Cook, "her interest, claim, lien and charge by virtue of the provisions of the will of said Valentine Cook, or otherwise, upon the assets and business of the firm known as Valentine Cook & Son, as they existed at the time of the death of said Valentine Cook, and as they now exist, for the sum of $5,000, and interest thereon at 5 per cent. per annum until said sum of $5,000 shall have been paid as hereinafter set forth." To secure the payment of said sum, the latter assigned "all the right, title, and interest which he may acquire, and of which he may become seised and possessed in and to the said estate and property of his mother, Christine Cook, at her death, as well as all his right, title, and interest in and to the residuary estate of his father, Valentine Cook, deceased." It was further provided that the filing of the duplicate assignment with the executors of either of said estates, should be an order and direction to them to pay said amount; that the said Martin V. Cook should have the right to pay off said sum in installments, and that, upon full payment being made, the said Christine Straiton would execute a release.

As shown by the schedules upon which the adjudication of bankruptcy was based, the liabilities of the bankrupt were $35,365.25, and his assets were $23,-992.72. On the 17th of December, 1900, in a proceeding before the referee in

bankruptcy, the attorney for the trustee, the plaintiff herein, offered said instrument in evidence. Subsequently—the exact time does not appear—an action was brought by one William Cook against the plaintiff herein, the said defendants, Christine Straiton and Martin V. Cook, and others. An answer was interposed by this plaintiff, verified on the 24th of March, 1903, in which he set up a counterclaim, substantially like the cause of action alleged herein. That action was terminated by a judgment, dismissing the complaint, entered June 26, 1903. This action was begun May 1, 1909.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

D. W. Steele, Jr. (Frederick C. McLaughlin, on the brief), for appellants.

Edward W. Hatch, for respondent.

MILLER, J. Before proceeding to discuss the questions which we consider decisive of this appeal, it may not be amiss to call attention to the fact that the appellants' brief has been of no assistance to the court because the statements of fact do not have any folio references to the record, and we have been unable to find in the record support for some of them.

There is a suggestion in the brief of the respondent that the instrument, adjudged fraudulent and void, amounted to an unlawful preference within the bankruptcy act (Act July, 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, c. 3418]), but it is quite apparent that that question has not been litigated. The plaintiff's theory, stated at the commencement of the trial, was that the assignment was voluntary and was made when the said Martin V. Cook was insolvent, and was therefore fraudulent and void as to creditors. The case was tried upon that theory, and the judgment so adjudges. No attempt whatever was made to prove actual fraud or an intent to create an unlawful preference. The plaintiff rested upon proof of the adjudication of bankruptcy and of the fact that the financial condition of the bankrupt had remained the same for upwards of a month preceding that time.

The learned counsel for the respondent ingeniously argues that the legacy to Christine Straiton, charged upon the bequest to Martin V. Cook and Arthur E. Helmrich, created no lien upon the assets of the copartnership, for the reason that the testator had an equitable interest only; that, by continuing the firm business, the survivors did not accept the bequest or become liable to pay the charge thereon; that therefore, when the instrument in question was made, Martin v. Cook was under no obligation to pay the legacy of $5,000 to his sister, and that she had no interest, lien, claim or charge upon the firm assets or business which she could assign. No doubt, the legal title to copartnership assets passes to the survivors. But that does not preclude us from giving effect to the will of the testator. While the surviving partners took title for the purpose of liquidating the copartnership, it is quite evident that they accepted the bequest and continued the business, not as survivors but as successors to the old firm. Moreover, it appears that the bequest was of individual property as well as of the testator's interest in the copartnership. While the record is meager of facts, showing the condition of the business at the death of said testator and

the purpose of the survivors in continuing it, it seems to me that its continuance for three years, in the absence of any evidence to the contrary, requires the inference that the legacy was accepted, and that thereby the obligation to pay the charge upon it was incurred. If so, there was ample consideration for the agreement of September 29, 1900. Irrespective of the literal words of the agreement, its plain purpose was to secure the payment of that obligation. A method of paying it was provided for, upon the completion of which, a release was to be given.

But in any view of the case, the statute of limitations is a bar to the maintenance of the action. At least as early as December 17, 1900, the plaintiff was chargeable with knowledge of the assignment and of the consideration for it. But it is claimed that he did not know that the said Martin V. Cook was insolvent on the 29th day of September, 1900, although he knew that there was an adjudication of bankruptcy in the United States District Court on the 15th of October, 1900. The plaintiff knew every fact upon which he relied to maintain this action except the fact that the financial condition of said Cook remained unchanged for at least a month prior to the adjudication in bankruptcy, and we think he was chargeable with that knowledge, as matter of fact, if not as matter of law. The respondent is quite right in saying that he was not required to bring, and probably would not have been justified in bringing, an action on mere surmise or suspicion, and that the statute does not begin to run until knowledge of the facts, necessary to maintain the action, is acquired. Erickson v. Quinn, 47 N. Y. 410. But surely, a voluntary assignment on September 29th, if it was voluntary, followed by an actual adjudication of bankruptcy on October 15th, should give rise to more than a suspicion of insolvency on the 29th. While an adjudication of bankruptcy on a given date would not create any presumption as to insolvency on a given date prior thereto, proof of an assignment, followed by such an adjudication within two weeks, would at least be sufficient, if unexplained, to justify a finding of insolvency at the time of the assignment. While knowledge is necessary to set the statute running, a party cannot close his eyes to facts upon which any reasonable man would act. It is claimed that the plaintiff did not acquire knowledge of the said Cook's insolvency until the latter testified in May, 1903, in the action brought by William Cook, as trustee; but in his verified answer, interposed in that action, he made precisely the same claim which he now asserts in this action, and there is no pretense that he had any more knowledge when he verified that answer in March, 1903, then he had, or was chargeable with, on the 17th of December, 1900. The said testimony had not then been given.

Upon the facts disclosed by this record, then, the action was barred on the 17th of December, 1906, 2 years 4 months and 14 days before it was brought, unless some part of that time is to be excluded pursuant to section 412 of the Code of Civil Procedure. With respect to the action in which this plaintiff's counterclaim was interposed, all we know is that it was pending on March 24, 1903, when the answer was verified, and that it terminated June 26, 1903. It can hardly be supposed that the action was pending more than two years before the answer was

interposed, but the respondent contends that the burden was upon the defendants to establish the bar of the statute of limitations, and that for aught that appears in this record, the said action may have been pending during all the time from December 17, 1900, to June 26, 1903. Section 382 of the Code of Civil Procedure provides that such an action as this must be brought within 6 years. Section 412 provides an exception, and it does not seem necessary to cite authority upon the proposition that one who claims under an exception must bring himself within it.

The judgment should be reversed on the law and the facts, and a new trial granted, with costs to appellant abide the event.

INGRAHAM, P. J., and McLAUGHLIN, J., concur.

DOWLING, J. (dissenting). Upon the record it would seem that the transfer in question was a purely voluntary one. There is no proof of any absolute acceptance by either Martin V. Cook and Arthur E. Helmrich, or by Cook after the latter's death, of the bequest of the interest of Valentine Cook, Sr., in the firm, charged with the payment of the legacies to Christine Straiton and William Cook. The mere fact that the business was continued by the surviving partners did not constitute such an acceptance, for that was their right and duty as survivors; nor is there any proof that they ever realized any profit from the interest so bequeathed, or in any way treated it as their own. All that the legatees could claim, as it seems to me, was the payment of their legacies from the interest so bequeathed, if, upon an accounting, it was found that there was a surplus after the satisfaction of the firm debts, and then to the extent only that the interest of the testator in the firm was found able to respond to their claims.

Furthermore, I do not believe that the statute of limitations had barred the plaintiff's right to recover. It is quite true that on December 17, 1900, the plaintiff, through his attorney, knew that the transfer in question was a voluntary one, for on that day it was offered in evidence on behalf of plaintiff by his attorney in the bankruptcy proceedings. But it seems quite clear that plaintiff did not then know the other essential fact that at the time of making such transfer Cook was insolvent. Upon the proof the first time that plaintiff had reason to believe that fact was when he interposed his counterclaim in the suit of Cook v. Straiton on March 24, 1903, wherein he alleged, upon information and belief, practically the same facts as he sets up in his complaint in this action. Upon the trial of that action on May 7, 1903, Martin V. Cook for the first time was examined as to his financial condition, and he then admitted for the first time that although his petition in bankruptcy had been filed October 15, 1900, he had been insolvent for a month prior thereto, and had been engaged in preparing the schedules for a week or ten days before the petition was filed. The transfer in question bore date September 21, 1900. Plaintiff testified that he had no knowledge of the matters in controversy save as he acquired it through his attorney, and the latter testified that he first knew on May 7, 1903, of Cook's insolvency at the time of making the transfer. It

does not appear that the trustee in bankruptcy had any means at his command by which he could have acquired this knowledge at an earlier date, either from the books of the bankrupt or otherwise, nor does it appear save by the statement of the bankrupt how long his condition of insolvency had existed. Surely he cannot be charged with the knowledge of the bankrupt, never communicated to him. Concededly, the six-year statute of limitation applies here. Section 382, subd. 5, Code Civ. Proc. Plaintiff having by May 7, 1903, acquired knowledge both that the transfer in question was a voluntary one, and that Cook was insolvent at the time of its making, the statute then began to run. But the action of Cook v. Straiton was then pending, in which by way of counterclaim the plaintiff herein had pleaded substantially the present cause of action and prayed for judgment in his favor. Under section 412, Code Civ. Proc., the running of the statute was therefore suspended until the termination of that action which occurred on June 26, 1903, when the complaint therein was dismissed, and the counterclaim was not passed upon. The statute therefore began to run June 26, 1903, and this action having been commenced May 1, 1909, was within the period limited.

I believe, therefore, that the judgment appealed from should be affirmed, with costs.

LAUGHLIN, J., concurs.