SIMEON GROSS, Respondent, v. JOSEPH ROBINSON, Appellant.

Kansas City Court of Appeals.     February 16, 1920.

1. **PERSONAL INJURY:** Pleading: Proof of Negligence.    Though an absence of a filter to an X ray machine was not pleaded, yet it was proper to allow proof of such absence as tending to show negligence in certain character of exposures.

2. **MALPRACTICE:** Physician: Negligence of Second Physician: Master and Servant.    When one physician sends another to treat the former's patient and the latter does so with the patient's consent, there is no relation of principal and agent or Master and Servant, between them and the former is not liable for the negligence of the latter.  The rule of *respondeat superior* does not apply.

3. **X RAY:** One Physician Called in by Another: Negligence: Liability of First For Negigence of Second.    Where one applies to a physician for an X ray picture and the latter makes several attempts to take

it, but fails, and then calls in another reputable physician to take it, and the latter, with the patient's consent, in the former's presence and with the former's machine, known to the former to be defective, fails to get a picture, and the former thereupon resumes his first efforts, finally failing altogether; it was *held* to be a question for the jury whether the first physician was liable for the negligence of the physician he called in.

4. **PHYSICIAN, NON EXPERT CALLED IN:** Negligence. Where one applies to a physician for an X ray picture and such physician makes several attempts to take it but fails and then calls in a person not a physician and requests him to try it with the same machine and he attempts it in the physician's presence but fails, and the physician then resumes his own efforts, it was *held* that the physician was liable for the negligence of the man he called in.

5. **X Ray: Physician: Patient: Assumption of Risk: Negligence.** Though a physician warned his patient that more than three exposures for an X ray picture without success was attended with much risk of injury and the patient consents to further attempts, he does not absolve the physician for negligence in further exposures.

6. **DAMAGES: Verdict.** $7500 held not to be excessive for severe burns in attempt to get a picture by X ray.

Appeal from Jackson Circuit Court.—*Hon. Thos. B. Buckner,* Judge.

AFFIRMED.

*Bruce Barnett & Harding* and *Deatherage, Murphy & Stinson* for respondent.

*Battle McCardle* and *Boyle & Watson* for appellant.

ELLISON, P. J.—Plaintiff's action is for damages alleged to have resulted to him through the negligence of defendant in attempting to secure two X ray pictures of a fractured rib with which plaintiff was suffering. The verdict was in plaintiff's favor in the sum of ten thousand dollars. Twenty-five hundred dollars of this was remitted and judgment rendered for seven thousand five hundred dollars.

It is alleged in the petition that one of plaintiff's ribs was fractured and that desiring an X ray picture

of the fracture to use as evidence in court where he expected to appear, he applied to defendant, who represented himself as an expert, to secure the picture. It is then alleged that defendant "exposed him to the rays made by defendant's X ray apparatus twelve or fifteen times, more or less within two weeks." That "said X ray is a powerful and deadly current of electricity with great power of penetration and that the exposure of the body of a person to too great a quantity of said ray within said period is very likely to result in severe burns to the body of the person so over expose, and that defendant, his agents and servants acting as aforesaid, negligently and unskillfully exposed plaintiff's body to too great a quantity of said ray in said period of time, and negligently and unskillfully exposed plaintiff to too much of said ray in the last two of said exposures. . . . And plaintiff says that defendant and his servants acting as aforesaid so negligently gave plaintiff too much of said ray by exposing him for approximately 375 seconds, at a target skin distance of about ten inches, using about thirty milliamperes of current, and with a spark gap of not less than two and one-half inches, as a direct result of which plaintiff received the severe and lasting burns and injuries hereinafter set out, . . . "That said burns produced a raw and open sore of such a character that the same would not heal without the removal of certain matter at the place of said burns or wound, and as a direct result thereof it became necessary for said matter to be and the same was removed by surgical operation; that after such surgical operation said burns or would were and continued to be raw and open and the skin or epidermis would not grow over said raw and open place, and because and on account thereof, by surgical operation performed on the 8th day of June, 1916, skin was removed from plaintiff's left leg and grafted upon said open sore; that said removal of skin from plaintiff's leg and said grafting thereof upon said wound became and was necessary for the

purpose of closing said open sore and wound and for the healing thereof, after said surgical operation, that is to say, said grafting of skin, said burns, wounds and sore, continued to remain raw and open until the 15th day of August, 1916, upon which date the same closed over and the same did not close over at any earlier time.''

Complaint is made that the trial court allowed plaintiff to introduce evidence tending to show a machine which lacked certain appliances, when such condition was not pleaded. The avowed object in such testimony was only for the purpose of proving the negligence charged. That is to say, if a machine was not equipped with a ''filter'' it was negligence to use it. There was no pretence that the absence of a filter was, itself, negligence. But a filter being absent, it was negligence to make certain character of exposures for certain time, without the protection of a filter. Such evidence was necessary for framing an intelligible hypothetical question to an expert.

Evidence tending to show that the sore made by the burn would probably become malignant was given and justified under the petition as set out above.

One Steiner who was a salesman for the ''Physicians Supply Co.,'' and had sold defendant the X ray machine was at the latters office and after the latter had failed with one or more exposures, he turned to Steiner and asked him to try if he could take one; he made the attempt but failed.

It appears that Dr. Donaldson was a reputable physician and that after defendant had made several failures and Steiner had failed to get a picture, he then, in plaintiff's presence, called Donaldson over the telephone, saying to him that he had a man over at his office who wanted an X ray picture and that he (defendant) could not get one and wanted him (Donaldson) to come and take one. Donaldson came to defendant's office and, on his arrival, defendant ''requested'' him to take a picture with defendant's machine. Donaldson made the attempt, but no picture was gotten.

Defendant's position is that he was not liable for the acts of either of these persons, and that as their attempts to secure a picture may have been the exposures that caused, or substantially increased, plaintiff's injury, a case was not made against him. As Donaldson was a skilled physician and Steiner was not, a physician at all, we will endeavor to determine the relation they separately bore to defendant with reference to whether he is responsible for the acts of either.

It seems that the relation of master and servant, or principal and agent does not exist between two physician where one has been sent to treat the patient of the other with the consent of the patient. In such instance the rule of *respondeat superior* does not apply. [Moore v. Lee, 211 S. W. 214 (Texas); Norton v. Hefner, 132 Ark. 18; Meyers v. Holborn, 58 N. J. L. 193; Arkansas Midland R. R. v. Pearson, 98 Ark. 399.] The idea running through these cases is that the rule does not apply "to a physician or other professional man who, when employed, acts upon his own iniative and without direction from others." In the last of the cases just cited it is said (p. 410); "A physician cannot be regarded as an agent or servant in the usual sense of the term, since he is not and necessarily cannot be directed in the diagnosing of diseases and injuries and prescribing treatment therefor, his office being to exercise his best skill and judgment in such matters, without control from those by whom he is called or his fees are paid." [21 R. C. L., last part, sec. 38, p. 395.] The principle is stated in Wood on Master and Servant, sec. 311 and DeForrest v. Wright, 2 Mich. 368.

From this legal stand point, as applied to the facts we have stated, as regards Dr. Donaldson should defendant be held as a matter of law, not liable to this action on account of the part he took in it? We think we should not so rule. Defendant had already caused two or more exposures, when he had Dr. Donaldson intervene and in his presence take another with the

same machine. The defendant then resuming the same treatment with the same machine. Defendant's continuance of the exposures with knowledge of what Donaldson had done tended to show an adoption of the latter's effort. Keeping in mind that it was the number of exposures, within a given time, made as these were, that may have been the cause of plaintiff's injury, especially when considered with the defective machine and with defendant's knowledge of these things and of his presence when Donaldson acted, it would seem to be unrighteous and unreasonable to absolve defendant from liability for Donaldsons negligence, as a matter of law. It is a question for a jury.

Coming to Steiner's part in it, we find less excuse for defendant's claim in that respect than there is in the claim as to Donaldson. For Steiner was not a physician and made no pretence to the experience and skill of an expert in the medical profession.

We leave out of consideration the part taken by Dr. Marty. There can be no reasonable ground to believe that the successful exposures made by him had influence on the injury to plaintiff. It appears that when complete failure had been made by defendant, Donaldson and Steiner, defendant gave it up and Dr. Marty took plaintiff to a hospital, laid him upon a table and with an exposure of three seconds, got a picture and brought the affair that had been so prolonged and caused so many failures with such dire result, to a quick and successful end.

We find no objection to the action of the court in giving instructions for plaintiff and refusing others for defendant. No. 1, for plaintiff is not subject to the criticism of assuming that defendant had agents (Donaldson and Steiner). Whether defendant had agents was made to depend upon the belief of the jury. Nor do we find any objection to other parts of the instruction; all were justified by the evidence.

Instructions 3 and 4 for plaintiff were on the subject of defendant's claim that he warned plaintiff of danger in more than two or three exposures in a given time, and that if plaintiff insisted on them it would be at his risk. But while plaintiff may have assented to more that the two or three exposures, yet, of course, he did not assent to a careless exposure with a machine that was out of order. While there was evidence tending to show that plaintiff was warned against more than three exposures and assented to a greater number, he did not consent to negligent conduct in the manner of taking the exposures, or of the defects in the machine used by defendant. We think plaintiffs instructions, connected with No. 1, given for him and those modified and given for defendant, clearly gave the benefit of his claim of warning while at the same time it would not excuse defendant for negligent conduct in the prior negligent manner of taking as explained in plaintiffs No. 1 or for the machine used. [Hales v. Raines, 162 Mo. App. 46, 65, 66.] In considering these and similar objections besides reading plaintiffs No. 1 in connection, it should not be overlooked that though defendant knew after his first or second attempt of the defective machine he continued to use it until (including Donaldson and Steiners effort) more than a dozen failures had been made.

What we have written covers other objections save as to the claim of excessive verdict. Under the rule governing authority of Appellate Courts over the amount of damages allowed by a jury and approved by the trial court, we do not feel that we should interfere by a furthehr reduction. Plaintiff was terribly burned over the stomach and abdomen, leaving a raw and malignant sore of ten or twelve inches in diameter. There was loss of tissue in the center of the burn by which, was meant, as explained by the physician, "death or gangrenous portion of the skin which died as a result of X ray. The burn went through the entire thickness of the skin, through the superficial facia and through

the fat beneath it.'' He was unable to lie in bed and was compelled to sit in a chair from February to September. He could not straighten himself and went about in a stooped position. He was compelled to take opiates for several months. He lost six months wages at $100 per month and has been put to the expense of $500 medical bill. We think, that considering the extrodinary degree of suffering, the ulcerous character of the sore and its location on his body, together with the disturbed nervous condition he still is in, the amount of the verdict ought not to be disturbed.

The judgment is affirmed. All concur.