ROBERT CONNELL et al., Respondents, v CHARLES W. HAYDEN, Defendant, and OLE T. JONASSEN et al., Appellants.

Second Department, October 19, 1981

APPEARANCES OF COUNSEL

*Anthony L. Schiavetti (Norman Bard* of counsel; *Joan Brody* on the brief), for appellants.

*Bruce G. Clark & Associates (Bruce G. Clark* of counsel and *Joanne I. Gabrynowicz* on the brief), for respondents.

OPINION OF THE COURT

DAMIANI, J. P.

This is an appeal by defendant Dr. Ole Thor Jonassen from so much of an order of the Supreme Court, Nassau County, as denied his motion for summary judgment upon the grounds of lack of in personam jurisdiction and the Statute of Limitations and an appeal by Dr. Charles W. Hayden, M.D., and Dr. Ole Thor Jonassen, M.D., P.C., an unnamed and unserved professional service corporation through which the named defendants practiced medicine, from so much of said order as found it subject to in personam jurisdiction and granted plaintiffs leave to amend their complaint to state a cause of action against it.

THE FACTS

The defendants Charles W. Hayden and Ole Thor Jonassen are medical doctors engaged in the practice of surgery.

Prior to August 1, 1971 their association took the form of a partnership and since that date they have practiced as a professional service corporation.

This malpractice action was commenced against the two doctors by a former patient named Robert Connell to recover damages for personal injuries and by his wife Dorothy to recover damages for loss of consortium and services. Jurisdiction over the person of Dr. Hayden was obtained by personally delivering a copy of the summons and complaint to him on September 20, 1977. On the same day, plaintiffs attempted to effectuate service upon Dr. Jonassen by delivering his copy of the summons and complaint to Dr. Hayden and by mailing an additional copy thereof to Dr. Jonassen's place of business. The summons and complaint named only the two doctors as individual defendants and did not allege that they practiced either as a partnership or as a professional service corporation.

Dr. Jonassen served an answer which denied the material allegations of the complaint and asserted the defense of lack of personal jurisdiction and the affirmative defense of the Statute of Limitations. Plaintiffs' bill of particulars alleged that the acts of malpractice by Dr. Jonassen were committed between September 14, 1972 and October 20, 1972 at the office of the defendants and at the Community Hospital at Glen Cove.

On or about February 22, 1980 Dr. Jonassen made a motion which he denominated as one to dismiss plaintiffs' complaint pursuant to CPLR 3211 (subd [a], pars 5, 8) upon the grounds of lack of personal jurisdiction and the bar of the Statute of Limitations. The motion was made after joinder of issue and for that reason it was actually one for summary judgment pursuant to CPLR 3212 on grounds enumerated in CPLR 3211 (subd [a]) (see CPLR 3212, subd [a]; CPLR 3211, subd [e]). Since the two defenses were asserted in defendant Jonassen's answer and since there is no indication that he made a prior motion to dismiss under CPLR 3211 without raising those defenses, they were not waived and were properly presented on that defendant's motion for summary judgment (CPLR 3211, subd [e]; Siegel, Practice Commentaries, McKinney's Cons Laws of NY,

Book 7B, CPLR, C3212:20, p 439; Siegel, New York Practice, § 283).

In support of Dr. Jonassen's motion for summary judgment it was argued that mailing the summons and complaint to his place of business rather than his residence rendered the attempted service ineffective to obtain jurisdiction over his person and that since the acts of malpractice were alleged by plaintiffs to have occurred in 1972 and the action was not commenced until 1977, it was barred by the Statute of Limitations. In opposition to the motion, plaintiffs' attorney argued that there had been sufficient compliance with CPLR 308 to obtain personal jurisdiction and that since Dr. Jonassen and Dr. Hayden practiced medicine as a "partnership", service upon Hayden conferred jurisdiction upon the partnership. It was also claimed that the action was commenced within the applicable limitation of time for malpractice actions after the alleged "partnership" ceased treating plaintiff Robert Connell. In reply, the attorney for defendant Dr. Jonassen argued, *inter alia,* that the defendants practiced in the form of a professional service corporation, not a partnership, and that in any event, plaintiffs had not obtained jurisdiction over a partnership or corporation by serving only Dr. Hayden because the summons and complaint did not separately name either such entity.

Special Term denied the motion for summary judgment holding, *inter alia,* (1) that since no party had submitted evidence as to the last date of treatment, it could not determine the Statute of Limitations issue, (2) that since the named individual defendants practiced as a professional service corporation, service upon Dr. Hayden conferred jurisdiction over the corporation pursuant to CPLR 311, and (3) that since Dr. Hayden and Dr. Jonassen were united in interest, the Statute of Limitations was "tolled" by personal delivery of the summons to Hayden (citing CPLR 203, subd [b]) and therefore the plaintiffs could "now effectuate personal service on DR. JONASSEN." The court went on to grant plaintiffs leave to serve an amended complaint "to reflect that these two doctors practiced medicine as a professional corporation". Dr. Jonassen and the corporation have appealed.

The memorandum decision of Special Term and the appellate briefs of the parties have consistently intertwined arguments concerning the two logically separate and distinct defenses of the Statute of Limitations and lack of personal jurisdiction. Each is governed by different rules (see, e.g., CPLR art 2, for limitations of time and CPLR art 3 for jurisdiction; see, also, CPLR 3211, subd [a], pars 5, 8; subd [e]). The former concerns the *period of time* within which an action must be commenced and the latter concerns the *act* of service of process (see *Morrison v Foster,* 80 AD2d 887). Their point of coincidence is that limitations of time are most often computed with reference to the date upon which the act of service took place (see CPLR 203, subd [b]).

### IN PERSONAM JURISDICTION

We first address the question of personal jurisdiction. Plaintiffs had the burden of proof on that issue *(Jacobs v Zurich Ins. Co.,* 53 AD2d 524, 525; *Saratoga Harness Racing Assn. v Moss,* 26 AD2d 486, 490, affd 20 NY2d 733). They claim that they obtained jurisdiction over Dr. Jonassen by delivering a copy of the summons and complaint to Dr. Hayden, a person of suitable age and discretion, at Dr. Jonassen's business address and by mailing a copy of the process to that same business address rather than to Dr. Jonassen's last known residence as required by CPLR 308 (subd 2). We have repeatedly held to the contrary, that subdivision 2 means what it says and that mailing the copy to the named defendant's office will not satisfy the statute *(Chalk v Catholic Med. Center of Brooklyn & Queens,* 58 AD2d 822; *Glikman v Horowitz,* 66 AD2d 814; *Frankel v French & Polyclinic Med. School & Health Center,* 70 AD2d 948; cf. *Pober v Boulevard Hosp.,* 72 AD2d 600; *Feinstein v Bergner,* 48 NY2d 234, 239). Since delivery and mailing to the defendant's place of business was not authorized by subdivision 2, it was incumbent upon plaintiffs to obtain a court order, in advance, authorizing utilization of the method of service actually adopted here upon a showing that service under CPLR 308 (subd 1, 2 or 4) was impracticable (CPLR 308, subd 5; *Chalk v Catholic Med. Center of Brooklyn & Queens, supra,* p 824). Accordingly, service upon Dr. Jonassen was defective, his defense of lack of

jurisdiction was well taken, his motion for summary judgment on that ground should have been granted and thereupon plaintiffs' complaint against him should have been dismissed.

■ We also note in this regard that Special Term erred in denying Dr. Jonassen's motion for summary judgment dismissing plaintiffs' complaint for lack of in personam jurisdiction upon the ground that since he was "united in interest" with Dr. Hayden under CPLR 203 (subd [b]), service upon the latter "tolled" the Statute of Limitations and plaintiffs could now effectuate service upon Jonassen. As we said in the case of *Morrison v Foster* (80 AD2d 887, 888, *supra):* "[T]he basic effect of [that] provision is that timely service upon any one of two or more defendants who are 'united in interest' as to a claim, permanently deprives all codefendants of the defense of the Statute of Limitations *(Zeitler v City of Rochester,* 32 AD2d 728; 1 Weinstein-Korn-Miller, NY Civ Prac, par 203.05). This does not, however, mean that the court has jurisdiction over the unserved defendant. To acquire personal jurisdiction over the codefendant, the plaintiff still must properly serve a summons upon him." Thus, even assuming for purposes of argument the correctness of Special Term's conclusion that Doctors Hayden and Jonassen were united in interest, the failure of plaintiffs to properly effectuate service upon the latter mandated that his motion to dismiss for lack of jurisdiction be granted.

The next jurisdictional problem in this case concerns the professional service corporation through which the named defendant doctors practiced medicine. Special Term held that service upon Dr. Hayden was good against the corporation, citing CPLR 311, and permitted the plaintiffs to amend their complaint to plead a cause of action against it. The corporation was not named in the summons and complaint and the named defendants were sued in their individual capacities only, without any allegation in the plaintiffs' pleading that they practiced together as either a partnership or corporation.

CPLR 304 states in relevant part that "[a]n action is commenced and jurisdiction acquired by service of a summons." The purpose of the summons is to notify the defen-

dant named therein that the plaintiff seeks a judgment against him so that he may take such steps as may seem advisable to protect his interest *(Stuyvesant v Weil,* 167 NY 421, 425; 3 Carmody-Wait 2d, NY Prac, § 24:1). Such notice is an absolutely fundamental requirement of due process of law under the Fourteenth Amendment to the United States Constitution *(Mullane v Central Hanover Trust Co.,* 339 US 306, 314-315; *Schroeder v City of New York,* 371 US 208, 211-212). A court may, at any time, exercise its discretion to permit the amendment of a summons "if a substantial right of a *party against whom the summons issued* is not prejudiced" (CPLR 305, subd [c]; emphasis added; see, also, CPLR 2001). As part of this liberal amendment policy, our courts have often permitted the correction of a misnomer or a misdescription of the legal status or title of a party, provided that the party misnamed or misdescribed was fairly apprised of the fact that he, she or it was intended to be affected by the proceedings (see 3 Carmody-Wait 2d, NY Prac, §§ 19:11-19:19).

As stated above, the summons and complaint served upon Dr. Hayden did not aver that the individual named defendants were in any way associated with one another, much less that plaintiffs intended to reach the professional entity through which those defendants did, in fact, conduct their practice. It was in plaintiffs' papers in opposition to Dr. Jonassen's motion for summary judgment that they first indicated their desire to make the professional entity, whether a partnership or a professional service corporation, a party to this action.

As long ago as 1903, in the case of *Licausi v Ashworth* (78 App Div 486), this court held that a summons which named and which was served only upon an individual could not be amended so as to substitute an unnamed corporation through which the named party conducted his business (see, also, *Jet Age Knitwear Mach. Corp. v Philip,* 22 AD2d 674; *Nutting v November,* 232 App Div 848; *Meadow Brook Nat. Bank of Nassau County v Pucillo,* 23 Misc 2d 228; cf. *Gray v Vought & Co.,* 216 App Div 230, app dsmd 243 NY 585). In order to justify the amendment of a summons in such circumstances, some apparent misde-

scription or misnomer must be found on the process actually served which would justify the conclusion that the plaintiff issued the process against a business entity and that the process fairly apprised the entity that plaintiff intended to seek a judgment against it (CPLR 305, subd [c]; 1 Weinstein-Korn-Miller, NY Civ Prac, par 305.16).

█ The summons in this case was issued only against two individual defendants without reflecting any intent to make their professional service corporation a party. We cannot conclude, as did Special Term, that commencement of this action against the individual doctors by service upon Dr. Hayden can be transmogrified into the commencement of a suit against the corporation (but see contra, *Richardson v Millard,* 58 Misc 2d 502, app dsmd 33 AD2d 820, mot to amend notice of app & for rearg granted & upon rearg order affd 33 AD2d 944). Since the summons served on Dr. Hayden was not issued against the corporation our courts lack jurisdiction over it. Amendment of the original summons to name the corporation would in effect add a new party, and not merely correct the name of a party that the plaintiffs originally intended to join. Such an amendment of the original summons is unauthorized under CPLR 305 (subd [c]).

The mechanism for effectuating the desire of plaintiffs to obtain jurisdiction over the corporation as expressed in their opposition papers at Special Term and in their brief on this appeal is contained in CPLR 1003 and CPLR 305 (subd [a]) (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C1003:1, p 450; C305:2, p 175; and 1975 Supplementary Practice Commentary to CPLR, C305:2, p 98, 1980-1981 Pocket Part; see, also, 2 Weinstein-Korn-Miller, NY Civ Prac, pars 1003.06-1003.08). A new party can only be added with prior court approval by serving it with a supplemental summons. Plaintiffs are hereby granted permission to add Charles W. Hayden, M.D. and Ole Thor Jonassen, M.D., P.C., as a party defendant by the service upon it of a supplemental summons. Pursuant to the order appealed from, plaintiffs may then also serve an amended complaint (CPLR 3025, subd [b]).

The remaining issue raised by the parties concerns the Statute of Limitations. In view of our holding that neither Dr. Jonassen nor the corporation are at present subject to in personam jurisdiction because they have not been properly served with process, it is not now strictly necessary to reach the issue. However, the decision of Special Term and the briefs on appeal contain such a potpourri of arguments concerning the Statute of Limitations and an intermingling with them of issues and rules relating solely to the question of jurisdiction that we deem it advisable to address the implications of the statute upon this case so as to provide some guidance in the event that Dr. Jonassen and the corporation are served and interpose that affirmative defense.

Plaintiffs' bill of particulars asserts that the acts or omissions constituting the malpractice complained of occurred between September 14, 1972 and October 20, 1972. Accordingly, the applicable Statute of Limitations is the three-year period set forth in former subdivision 6 of CPLR 214 and not the two and one-half year period of CPLR 214-a, which became effective on July 1, 1975 (see L 1975, ch 109, § 37; cf. *Szajna v Rand,* 75 AD2d 617, 618). Implementation of that limitation of time will require the determination of (1) the date upon which plaintiffs' cause of action accrued so as to commence the three-year period running and (2) the date upon which plaintiffs' claim was interposed.

*Claim Accrual*

It is the general rule that a cause of action for malpractice accrues on the date of the act or omission complained of *(Davis v City of New York,* 38 NY2d 257, 259; 1 Weinstein-Korn-Miller, NY Civ Prac, par 214-a.03) or upon the termination of a series of wrongful acts or omissions *(Nervick v Fine,* 195 Misc 464, affd 275 App Div 1043, mot for lv to app den 276 App Div 775). However, an exception to the general rule applies where the malpractice was committed as part of a continuous course of treatment rendered to the plaintiff by the defendant for the same or related illnesses or injuries. In such event the cause of action accrues at the

end of the course of treatment *(Borgia v City of New York,* 12 NY2d 151, 155). A question of fact is presented on this record as to whether plaintiff Robert Connell underwent a continuous course of treatment as claimed and, if so, when that treatment terminated. The defendant interposing the Statute of Limitations as an affirmative defense has the burden of proving its applicability (CPLR 3018, subd [b]; 2 Carmody-Wait 2d, NY Prac, § 13:287). However, a plaintiff relying upon an exception thereto has the burden of proving that he comes within the exception *(Beattys v Straiton,* 142 App Div 369, 375; *Murphy v Walsh,* 113 App Div 428). Since the continuous course of treatment rule constitutes an exception to the general rule concerning claim accrual, plaintiffs would have the burden of proof in any hearing to determine that factual question.

Dr. Jonassen argued at Special Term that for the purpose of determining the date upon which plaintiffs' cause of action accrued under the continuous treatment exception, it is the last date of treatment he rendered and not the last date of treatment by Dr. Hayden which governs, despite the fact that they were both employees of the same professional service corporation. That argument was not determined by Special Term and we decline to pass upon it now.

*Claim Interposition — The "United in Interest" Rule*

The next point concerns whether Dr. Jonassen and the corporation are "co-defendant[s] united in interest" with Dr. Hayden so that personal service of the summons and complaint upon the latter constituted interposition of plaintiffs' claim against them as well (CPLR 203, subd [b]).[1] The issue has arisen in the following circumstances: within the time limited by the Statute of Limitations, plaintiffs validly commenced this action to recover for malpractice by causing a summons to be served upon Dr. Hayden. The limitation of time has now expired and if plaintiff manages to properly serve Dr. Jonassen and the professional service corporation, they will undoubtedly assert the defense of the Statute of Limitations (they have

---

1. CPLR 203 states in relevant part:

"(b) Claim in complaint. A claim asserted in the complaint is interposed against the defendant *or a codefendant united in interest with him* when:

"1. The summons is served upon the defendant" (emphasis added).

argued its applicability on this appeal). Plaintiffs claim that the corporation and Dr. Jonassen are united in interest with Dr. Hayden so that despite late service, the date of the interposition of plaintiffs' claim against them will relate back to the date of timely service upon Dr. Hayden. Two separate questions are involved in this issue. Are the two doctors, who are coemployees of a professional service corporation, united in interest, and is the corporation united in interest with Dr. Hayden?

One leading treatise states that the term united in interest "has not proven easy to apply" (1 Weinstein-Korn-Miller, NY Civ Prac, par 203.06, p 2-68). Professor Siegel says that the "test of what interests are 'united' under this provision is pragmatic" (Siegel, New York Practice, § 45). The classic attempt at formulating a criterion for assessing unity of interest is contained in *Prudential Ins. Co. of Amer. v Stone* (270 NY 154, 159) in which the Court of Appeals stated that "[i]f the interest of the parties in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other then they are 'otherwise united in interest.'" While this formulation says much, it also leaves much unsaid.

A proper analysis of the "united in interest" language of CPLR 203 requires a basic understanding of the policies upon which Statutes of Limitation are based. These policies are briefly reviewed in Note: Federal Rule of Civil Procedure 15 (c): Relation Back of Amendments (57 Minn L Rev 83, 84-85), as follows: "First, the primary purpose of the statute is to compel the exercise of a right of action within a reasonable time so that a defendant will have a fair opportunity to prepare an adequate defense. Otherwise, the belated institution of an action might prejudice defendant's preparation of evidence. Such prejudice would commonly result, for example, where critical evidence is lost or where the facts have been obscured by the passage of time or faulty memories. The death or removal from the jurisdiction of witnesses is a further problem. Second, the statute relieves the defendant from the otherwise endless psychological fear of litigation based upon events in the distant past. Third, it frees the judicial system from stale claims which make resolution of fact issues both difficult

and arbitrary. Fourth, the courts are relieved of the additional caseload which would result if old causes of action were permitted, thus promoting efficient judicial administration. Finally, a limitations period avoids the disruptive effect of unsettled claims upon commercial intercourse. For example, creditors may more accurately determine a person's financial status if his former outstanding debts have been extinguished by the running of the statute of limitations." (See, also, Developments in the Law — Statutes of Limitations, 63 Harv L Rev 1177, 1185-1186; 1 Weinstein-Korn-Miller, NY Civ Prac, par 201.01; 2 Carmody-Wait 2d, NY Prac, § 13:1). In the case of *Flanagan v Mount Eden Gen. Hosp.* (24 NY2d 427, 429) the Court of Appeals had occasion to consider the rationale behind Statutes of Limitation stating that they were devised "to afford protection to defendants against defending stale claims after a reasonable period of time had elapsed during which a person of ordinary diligence would bring an action."

It thus appears that the primary purpose of Statutes of Limitation is to relieve defendants of the necessity of investigating and preparing a defense where the action is commenced against them after the expiration of the statutory period because the law presumes that by that time "evidence has been lost, memories have faded, and witnesses have disappeared" *(Telegraphers v Railway Express Agency,* 321 US 342, 348-349). In such a case the statute is an absolute bar to plaintiff's action. The united in interest language of CPLR 203 creates an exception to the foregoing rule. Where a defendant is served late, the plaintiff's claim will nevertheless be deemed interposed against him as of the earlier date upon which a codefendant united in interest with him was timely served and the Statute of Limitations will not constitute a bar to the action. The rationale behind this exception is that where the two defendants are united in interest their defenses will be the same and they will either stand or fall together with respect to plaintiff's claim. Timely service upon one of two such defendants gives sufficient notice to enable him to investigate all the defenses which are available to both defendants within the period of limitations. From this the rule has evolved that where one defendant "may" have a

defense which is not available to the other, they cannot be said to be united in interest *(Stevens v Young,* 272 App Div 784, 785; see, also, *Halucha v Jockey Club,* 31 Misc 2d 186, 189). The mere possibility that a defendant who was served late could have such a different defense is all that is required because, the statute having run, it is now too late for him to conduct an investigation into the viability of that defense. To determine unity of interest, therefore, one looks not to whether the two defendants will assert different defenses but rather whether they could assert such different defenses.

The history of what is now CPLR 203 (subd [b]) throws some light upon the question of when persons are united in interest. In 1851 the Legislature passed certain amendments to the then recently enacted Code of Procedure of 1848, the so-called Field Code, among which was the addition of section 99 which stated in relevant part that: "§ 99 An action is commenced as to each defendant when the summons is served on him, *or on a co-defendant who is a joint contractor, or otherwise united in interest,* with him" (L 1851, ch 479; emphasis added).

This language passed virtually unchanged into section 398 of the Code of Civil Procedure of 1876 and from there into section 16 of the Civil Practice Act of 1920. In the second annual report of the Advisory Committee on Practice and Procedure which developed the CPLR, it was recommended that the term "joint contractor" be dropped as an unnecessary example of a situation in which codefendants are united in interest (Second Preliminary Report of Advisory Committee on Practice and Procedure, 1958, p 49). The point of this historical discussion is that the initial draftsmen of the provision in question focused upon a jural relationship existing between two defendants, namely the status of being "joint contractors", and said that as to defendants having that or a like jural relationship, service upon either would be deemed commencement of the action for Statute of Limitations purposes.

We conclude from the foregoing that the question of unity of interest is to be determined from an examination of (1) the jural relationship of the parties whose interests are said to be united and (2) the nature of the claim

asserted against them by the plaintiff. In other words, when because of some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim, they will stand or fall together and are therefore united in interest. Unity of interest is a question of law and not of fact (see *Croker v Williamson,* 208 NY 480, 485; cf. *Jones v Felch,* 3 Bosw 63, which, although dealing with the question of the unity of interest of parties under a different section of the Code of Procedure, determined that question by overruling a demurrer, thereby indicating that it presented a legal, not a factual, issue).

Of the many reported cases in which the question of unity of interest has been raised since the rule was first enacted in 1851, we have found only one in which determination of that question was dependent upon a question of fact and was therefore deferred until trial. That case was *Horne v Loughman* (264 App Div 124), in which the receiver of a bank held certain judgments against the plaintiffs. As collateral security for the debt owed by plaintiffs to the bank, plaintiffs gave the receiver a note by one Thomas and payable to plaintiff Donald Horne. At the time of its delivery to the bank the note was due. Horne indorsed it and authorized the receiver of the bank to collect it. Several years thereafter the plaintiffs sued the receiver for a declaration that the bank's judgments against them had been discharged by his negligent conduct in failing to reduce the note to judgment before the Statute of Limitations ran against its maker Thomas. The theory of their case was that a pledgee of negotiable paper is bound to use reasonable diligence in the collection of it and if he neglects after maturity to enforce payment, he is liable to the pledgor for any loss which might have been prevented by proper diligence and proceedings to collect it. The defendant receiver moved to dismiss claiming that he had commenced an action on the note by serving a summons upon Horne which named both Horne and Thomas as defendants. Defendant contended that when Horne indorsed the note he became jointly liable with Thomas and that under section 16 of the Civil Practice Act, service upon him must be deemed the commencement of an action against Thomas for Statute of Limitations purposes. Special Term granted

the motion to dismiss and the plaintiffs appealed. The Appellate Division, First Department, reversed, stating in relevant part (p 125):

"At the time Horne indorsed the Thomas note, he was transferring that note to the receiver as collateral security for the payment of his existing debt upon the judgments. It might very plausibly be claimed that he was not by this transfer extending his personal liability to include the amount of the note. If he were not jointly liable with Thomas, section 16 of the Civil Practice Act would not have any application and the service of the summons upon him would not operate to continue the liability of Thomas.

"The purpose of indorsements of promissory notes made under unusual circumstances may be explained. (Neg. Inst. Law, §§ 113, 117 and 118; *Haddock, Blanchard & Co., Inc.* v. *Haddock,* 118 App. Div. 412; affd., 102 N.Y. 499.) The mere making of this indorsement on a past due note does not finally determine the question. Horne's intention in making the indorsement must be determined by a trial."

The *Horne* case can be explained and reconciled with our view that unity of interest is a question of law to be determined from an examination of the nature of plaintiff's claim and the jural relationship existing between the parties because in *Horne* the jural relationship itself was the subject of a disputed issue of fact. Horne claimed that his indorsement was not intended as a guarantee of payment of the note and that it was merely intended to enable the receiver to collect the note from Thomas. If that was so he was not liable on the indorsement and was not united in interest with Thomas. In the instant case there is no dispute as to the jural relationship existing between the parties defendant. The two individual doctors are coemployees of the professional service corporation, who have been charged with the tort of medical malpractice.

With respect to persons whose only relationship is that of joint tort-feasors, the courts have held that they are not united in interest. The reason for this rule is that where the proximate cause of an injury is the concurring wrongful acts or omissions of two or more persons acting independently, each is liable to plaintiff for the full amount of his damage, but the liability is only because of his own negli-

gence and the fault of his codefendant is not imputed to him (41 NY Jur, Negligence, § 35). Although the liability of joint tort-feasors is "joint and several", neither is responsible for the acts or omissions of the other. Either defendant could be held legally liable or not liable without a like finding as to the other defendant *(Farrell v American Beverage Corp.,* 203 Misc 330; see, also, *Marchetti v Linn,* 197 Misc 658, 660). In such a case the defendants' interests are not united because each will seek to show that he was not at fault and that it was the other who caused the injury *(Maguire v Yellow Taxicab Corp.,* 253 App Div 249, 251, affd 278 NY 576). Thus, in *Piedmont v Society of N.Y. Hosp.* (25 Misc 2d 41) it was held that doctors who treated plaintiff at different times in different capacities, and who were neither partners nor fellow employees, were not "united in interest" even if their joint fault caused plaintiff's injuries.

It follows from the foregoing that in an action to recover for the torts of negligence or malpractice the defenses available to two defendants will be identical, and thus their interests will be united, only where one is vicariously liable for the acts of the other. Professor Prosser explained the term "vicarious liability" as follows:

"A is negligent, B is not. 'Imputed negligence' means that, by reason of some relation existing between A and B, the negligence of A is to be charged against B, although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it. The result may be that B, in an action against C for his own injuries, is barred from recovery because of A's negligence, to the same extent as if he had been negligent himself. This is commonly called 'imputed contributory negligence.' Or the result may be that B, in C's action against him, becomes liable as a defendant for C's injuries, on the basis of A's negligence. This is sometimes called imputed negligence. More often it is called vicarious liability, or the principle is given the Latin name of *respondeat superior.*

"Since B himself has been free from all fault, when he is held liable to C it is in one sense a form of strict liability. In another it is not. The foundation of the action is still

negligence, or other fault, on the part of A; and all that the law has done is to broaden the liability for that fault by imposing it upon an additional, albeit innocent, defendant. It is still an action for negligence, and the ordinary rules of negligence liability are still applied to it. The most familiar illustration, of course, is the liability of a master for the torts of his servant in the course of his employment." (Prosser, Torts [4th ed], § 69, p 458.)

## Liability of a Professional Service Corporation for the Malpractice of its Employees

The rule is clear that partners are "united in interest" because they are each by statute fully, personally, and vicariously liable for the torts of their copartners committed within the scope of the partnership business (Partnership Law, §§ 24, 26; *Stuyvesant Ins. Co. v Matusow,* 26 Misc 2d 860; *Bennett v Watson,* 21 App Div 409, 412). Hence, in *Pandolfo v Ansbro* (10 Misc 2d 51) it was held that timely service upon one of three physicians who were partners constituted a timely commencement of the action against the other two doctors who were served late. Here, however, two doctors who were once partners changed the nature of their relationship by forming a professional service corporation and becoming its employees.

It has been held that employers (masters) and their employees (servants) are united in interest *(Hatch v Cherry-Burrell Corp.,* 274 App Div 234, 241). In *Diver v Jewish Hosp. of Brooklyn* (18 Misc 2d 231) the plaintiff in a malpractice action timely served a hospital and served an individual doctor after the Statute of Limitations had run. Since the doctor was an employee of the hospital, and the latter could only be held vicariously liable under the doctrine of *respondeat superior* for the negligence of the former, the court held that they were united in interest.

Business corporations are liable under the doctrine of *respondeat superior* for the torts of their employees committed within the scope of the corporate business (19 Am Jur 2d, Corporations, § 1427) and, as with any other corporation, professional service corporations are similarly vicariously liable for the torts of their servants *(Szajna v Rand,* 75 AD2d 617, 618, *supra).*

In cases in which one defendant is sought to be held vicariously liable for the torts of another, the former has a defense which is not available to the defendant accused of active wrongdoing. The defendant charged with vicarious liability can interpose the defense that the alleged wrongful acts of the other defendant were committed outside of the relationship giving rise to the vicarious liability. Thus a partner or a partnership can defend upon the ground that the active wrongdoing of another partner was not committed within the ordinary course of the partnership business or with the authority of his copartners (Partnership Law, §§ 24, 26; 43 NY Jur, Partnership, § 143), and a master can similarly argue that the tort of his servant cannot be imputed to him because it was not committed within the scope of the master's business *(Rolfe v Hewitt,* 227 NY 486, 490-493; 37 NY Jur, Master and Servant, § 156). Where, as in *Diver v Jewish Hosp. of Brooklyn* (18 Misc 2d 231, *supra),* the employer is served first, all the defenses available to the late served employee would have been available to the employer and it could have commenced a timely investigation of those defenses. Hence they are united in interest. What happens, however, where it is the employer that is served late? It might have a defense not available to the previously served employee, namely that his acts were not committed within the scope or course of his employment. It can be argued that in such a situation the defendants should not be held to be united in interest because by the late service of the summons upon it, the employer may well have been deprived of the ability to investigate its additional defense within the period of limitation (cf. *Halucha v Jockey Club,* 31 Misc 2d 186, 189, *supra;* McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C203:3, p 114, where the argument is made in just the reverse situation). However, in *Hatch v Cherry-Burrell Corp.* (274 App Div 234, *supra), Plumitallo v 1407 Broadway Realty Corp.* (279 App Div 1019), *Zeitler v City of Rochester* (32 AD2d 728), and *Jordan v Westhill Cent. School Dist.* (42 AD2d 1043) it was found that a late served employer was united in interest with a timely served employee.

We agree with the approach of the *Hatch, Plumitallo, Zeitler* and *Jordan* cases and hold that unity of interest does not turn upon whether the actual wrongdoer or the person or entity sought to be charged vicariously was served first. Although that approach admittedly forms a slight exception to the logic behind the unity of interest rule, it is one of long standing and places no insuperable obstacle to the preparation of a defense by the vicariously liable party. The defense in question is not an affirmative one and the plaintiff, in order to establish his right to recovery upon a theory of vicarious liability, will be obligated to prove that the wrongdoing which forms the basis of his suit was committed within the scope of the partnership's or master's business. More importantly, however, that defense does not go to the merits of the plaintiff's claim of negligence or malpractice, but rather it asserts that at the time the acts complained of were committed, the active tort-feasor was not acting within the scope of the relationship which would otherwise give rise to vicarious liability. The facts concerning that relationship are most often readily available to the partnership or master in its records, or are apparent from the alleged facts of the occurrence itself. Thus this is a defense which puts the jural relationship itself at issue and as in the case of *Horne v Loughman* (264 App Div 124, *supra)* the law defers its determination to the trial at which time the defendant asserting it will be discharged by the substantive defense rather than by the Statute of Limitations (cf. McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C203:3).

Another facet to the question of unity of interest in the master and servant situation is presented in *Shachter v Deepdale Gen. Hosp.* (NYLJ, May 28, 1979, p 7, col 2) in which the plaintiff sued a hospital and two doctors who he claimed were its employees. Special Term, Bronx County, held that Dr. A and the hospital were not united in interest, reasoning that the hospital might be held liable for the negligence of Dr. B even if Dr. A was exonerated and, therefore, that Dr. A and the hospital would not stand or fall together. We disagree with that line of reasoning in that, as between themselves, Dr. A and the employer

hospital did stand or fall together because if A was held not liable then the hospital would also escape vicarious liability for his negligence. Hence their defenses were the same though the defenses of Dr. A and Dr. B might be different.

■ Accordingly, we hold that the professional service corporation is united in interest with its timely served employee Hayden.

*Liability of an Employee of a Professional Service Corporation for the Malpractice of a Coemployee*

The next question for resolution is whether the two individual doctors can be said to be united in interest so that plaintiff's claim against Dr. Jonassen will be deemed interposed as of the earlier date upon which he timely served Dr. Hayden. As stated above, it appears that where as here, the action is one to recover for tort, persons who are charged with concurrent negligence producing plaintiff's injuries will not be held to be "united in interest" absent some relationship between them giving rise to vicarious liability for the acts of the other. The modern justification for the imposition of vicarious liability is a rule of policy deliberately allocating a risk to other persons in a given relationship (Prosser, Torts [4th ed], § 69, p 459; 2 Harper and James, Law of Torts, § 26.5). The nature of the relationship between the parties is the thing upon which vicarious liability depends. It exists in the relationships of copartners, master and servant, and joint venturers, but here Doctors Hayden and Jonassen are coshareholders, officers and employees of a professional service corporation. We must therefore ascertain whether the existence of that relationship gives rise to vicarious liability either at common law or under section 1505 of the Business Corporation Law.

At common law in this State a person injured by the negligence of another was required to seek his remedy against the person whose actual negligence caused the injury and that person alone was liable *(King v New York Cent. & Hudson Riv. R.R. Co.,* 66 NY 181; *Potts v Pardee,* 220 NY 431, 435; *Strickland v State of New York,* 13 Misc 2d 425, 429). The creation of vicarious liability in situations of master and servant or copartners constitutes an

exception to the general rule. The master was made vicariously liable for the acts of the servant committed within the scope of the employment because the law considers the servant to stand in the master's place acting for and representing the master *(Potts v Pardee, supra;* see, also, 57 CJS, Master and Servant, § 570, subd c). As stated above, a professional service corporation is liable, like any other corporation, for the torts of its officers or employees when acting in those capacities *(Szajna v Rand,* 75 AD2d 617, 618, *supra).* However, the rule is that no action can be maintained against a servant unless he can be considered a wrongdoer (57 CJS, Master and Servant, § 577), that is, a servant or agent is liable for injury to third persons when, and only when, he breaches some duty which he owes to such third person (Liability of Servant to Third Person, Ann., 20 ALR 97, 107-108, 99 ALR 408, 409; 53 Am Jur 2d, Master and Servant, § 446). In short, at common law, a servant is not vicariously liable for the negligence of his coemployee. Each is liable for his own negligence only. Thus in *Scher v Kronman* (70 AD2d 354, 356) it was held that doctors who were coemployees of a hospital were not united in interest, the Appellate Division, First Department, stating that "[w]hile the hospital may be held liable for the negligence of any one or more of its employees under the doctrine of *respondeat superior,* it does not follow that an employee who was not negligent can be held liable for the malpractice of his fellow employee or employees."

Claims of negligence against coemployees must be based upon allegations of the actual fault of both, and can arise in two circumstances, namely (1) where one is charged with negligent supervision of the other or (2) where neither is a supervisor but both combined to cause plaintiff's injury.

The doctrine of *respondeat superior* does not apply to impose vicarious liability upon supervisors (see *Yorston v Pennell,* 397 Pa 28, 39, 85 ALR2d 872, 880). The employer of both is liable under *respondeat superior,* but the supervisor is not because he lacks the right to select, control, and discharge the employee which is essential to the imposition of vicarious liability under that doctrine (57 CJS, Master and Servant, § 563). This does not mean that a supervisor may not be liable for the injuries caused by the conduct of

one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part. Section 358 of the Restatement of Agency, Second,[2] states in this regard:

"§ 358. Liability for Conduct of Other Agents

"(1) The agent of a disclosed or partially disclosed principal is not subject to liability for the conduct of other agents unless he is at fault in appointing, supervising, or cooperating with them."

The Reporter's Notes to this section state in relevant part: "The cases are unanimous in holding that a servant or other agent is not liable for the derelictions of fellow workers or other agents of the same principal. In the absence of wrongful directions or wrongful control or some other element involving wrongful conduct, the doctrine of respondeat superior does not apply to agents who are not masters" (Restatement, Agency 2d, Appendix, p 602).

The grounds for holding a supervisory employee liable for the conduct of those under his supervision are stated in sections 344, 351 and 356 of the Restatement of Agency, Second, as follows:

"§ 344. Liability for Directed Conduct or Consequences

"An agent is subject to liability, as he would be for his own personal conduct, for the consequences of another's conduct which results from his directions if, with knowledge of the circumstances, he intends the conduct, or its consequences, except where the agent or the one acting has a privilege or immunity not available to the other.

"§ 351. Directing or Permitting Negligent Conduct of Others

"An agent who directs or permits conduct of another under such circumstances that he should realize that there is an unreasonable risk of physical harm to others or to their belongings is subject to liability for harm resulting from a risk which his direction or permission creates.

---

2. Section 361 of the Restatement of Agency, Second, states that the rules as to the liability of agents to third persons are applicable to the liability of servants, subservants and other subagents.

"§ 356. Agent in Control of Third Persons

"An agent who has taken control over the conduct of another who, as he should realize, is likely to cause physical harm to the person or tangible belongings of third persons unless the conduct of the other is controlled, is under a duty to use reasonable care to take such measures of control as he is authorized to take."

In each of these situations the defense of the supervisor and supervisee could be different. The supervisor could argue that he did not intentionally direct the act, or if he did, could not foresee the risk of harm therefrom, or that he was not authorized by the employer to control the acts of the other. In such circumstances the coemployees would thus not be united in interest.[3]

There is another instance in which coemployees of a professional service corporation could be jointly liable without one possessing the authority to exercise control over the other. Here the coemployee doctors are charged with negligence in their joint diagnosis and treatment of the plaintiff. The liability of doctors who jointly diagnosed and treated the plaintiff is discussed in *Graddy v New York Med. Coll.* (19 AD2d 426, 429) in which Judge BERGAN, writing for the Appellate Division, First Department, said in dicta:

"In the absence of some recognized traditional legal relationship such as partnership, master and servant, or agency, between physicians in the treatment of patients, the imposition of liability on one for the negligence of the other has been largely limited to situations of joint action in diagnosis or treatment or some control of the course of treatment of one by the other. In *Bing* v. *Thunig* (2 N Y 2d 656), for example, liability was imposed on a hospital for the negligence of nurses employed by the hospital; in *Mrachek* v. *Sunshine Biscuit* (308 N.Y. 116), liability was similarly imposed on a business corporation, under very limited circumstances, for the negligence of a physician in

---

3. Where, however, an employee engages the services of a third party in the work of the master, the employee is liable vicariously for the torts of that third party under the doctrine of *respondeat superior* (Restatement, Agency 2d, § 362). Thus, where a doctor who is an employee of a professional corporation, adopts and controls the work of a hospital nurse during an operation he is vicariously liable for her acts as a master. No such allegations are present here.

its employ. (See, e.g., *Matter of Bernstein* v. *Beth Israel Hosp.*, 236 N.Y. 268.)

"Where physicians actually participate together in diagnosis and treatment, they may each incur a liability for the negligence of the other even though a more active part in the treatment may have been taken by one of them. *(Rodgers* v. *Canfield,* 272 Mich. 562, 564), but the Supreme Court of Michigan noted that any act of negligence 'by one, in the absence of the other, unless concerted, could not be attributed to the nonparticipant'.

"A family physician who participated in the diagnosis of a fracture for which a cast was negligently applied by a specialist and continued in active charge of the case after the cast was applied was held jointly negligent *(Morrill* v. *Komasinski,* 256 Wis. 417). This is the general rule: 'Physicians employed together by the patient, and diagnosing or treating the case together, without withdrawal by, or discharge of, either, owe the same duty and are jointly liable for any negligence.' (70 C.J.S., Physicians and Surgeons, § 54 subd. c, p. 977.) For a discussion of the rule applicable to medical partnership and agency in rendering medical care, see *Simons* v. *Northern Pacific Ry. Co.* (94 Mont. 355). As to liability where one physician is the employee of another, see *Moulton* v. *Huckleberry* (150 Ore. 538)." *(Bronstein v Ashkar,* NYLJ, Jan. 12, 1979, p 6, col 1, may also be such a case of joint treatment, but the opinion does not sufficiently recount the facts to determine whether that is so.)

In each of the cases cited by the court in *Graddy (supra)* the defendant doctor held liable was sufficiently involved in the joint decisions regarding diagnosis and treatment that they could be regarded as his negligent acts. In such a case the physician is answerable for his own acts as well as the wrongful acts and omissions of the other doctor which he observes and allows to continue without objection or which in the exercise of diligence he should have observed (61 Am Jur 2d, Physicians, Surgeons, and Other Healers, § 166). Beyond this his liability does not extend *(Morey v Thybo,* 199 F 760, 762; cf. *Scher v Kronman,* 70 AD2d 354, 356, *supra).* Hence such a doctor is fully liable for the plaintiff's injuries as a joint tort-feasor even though his

own fault was only part of their cause *(Rodgers v Canfield,* 272 Mich 562; see Physicians-Malpractice by Another, Ann., 85 ALR2d 889). We do not believe the second above-quoted paragraph from *Graddy* indicates that we have in this State adopted a rule of vicarious liability ·in joint treatment situations such as that prevailing in Missouri *(Baird v National Health Foundation,* 235 Mo App 594; *Martin v Barbour,* 558 SW2d 200, 208 [Mo]). In *Baird v National Health Foundation (supra,* pp 605-606) the court said: "It is contended that defendant physicians exercised their independent judgment, hence one is not liable for the errors of the others. Ordinarily that proposition is true. *(Gross* v. *Robinson,* 218 S.W. 924, 925). But here they were acting concurrently and all were employed by the same agency for a joint purpose, namely to look after and treat plaintiff. They were associated in the same office, the office of their joint employer; and they each had knowledge of what the other had done and was doing. The facts in evidence show that they were acting jointly in a common enterprise and for a common employer; and that Dr. Eugene was Medical Director and Drs. Glenn and Donaldson were his assistants."

The Missouri rule is apparently founded upon the doctrine of vicarious liability in cases involving joint enterprise which was explained by Professor Prosser as follows:

"The doctrine of vicarious responsibility in connection with joint enterprises rests upon an analogy to the law of partnership. In a partnership, there is more or less permanent business arrangement, creating a mutual agency between the partners for the purpose of carrying on some general business, so that the acts of one are to be charged against another. A 'joint enterprise' is something like a partnership, for a more limited period of time, and a more limited purpose. It is an undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise. The law then considers that each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest. Whether such a relation exists between the parties is

normally a question for the jury, under proper instructions from the court.

"Nearly all courts have accepted the principle of vicarious tort responsibility in such a case, but there is no complete agreement upon any one criterion by which the relation is to be determined.

"Where the enterprise is for some commercial or business purpose, and particularly where the parties have agreed to share profits and losses, it usually is called a joint adventure. It is then governed, as to tort liability, by the law applicable to partnerships * * * The extension of 'joint enterprise' beyond such business ventures is almost entirely a creature of the American courts.

"Except in comparatively rare instances, its application has been in the field of automobile law, where it has meant that the negligence of the driver of the vehicle is to be imputed to a passenger riding in it. In relatively few cases, the passenger has been charged with liability as a defendant to a third person who has been injured by the negligence. It is not altogether clear why this has not occurred more frequently, unless it is that, with a financially responsible defendant available in the negligent driver, the plaintiff has not thought it desirable to complicate matters by joining one who is personally innocent. In by far the greater number of cases, the question has been one of contributory negligence, and the driver's misconduct has been imputed to the passenger to bar his own recovery. 'Joint enterprise' is thus of importance chiefly as a defendant's doctrine, imputing the negligence of another to the plaintiff; and as such, it has not been slow to draw the wrath of the plaintiff's partisans.

"Considerable confusion still surrounds the doctrine, which no one has succeeded in reducing to any very exact formula or definition. A statement frequently quoted from an opinion of the supreme court of Washington [Carboneau v Peterson, 1 Wash 2d 347, 374] attempts the following:

" 'Briefly stated, a joint adventure arises out of, and must have its origin in, a contract, express or implied, in which the parties thereto agree to enter into an undertaking in the performance of which they have a community of

interest, and further, a contract in which each of the parties has an equal right of control over the agencies used in the performance. Thus we note (1) a contract, (2) a common purpose, (3) a community of interest, (4) equal right to a voice, accompanied by an equal right of control.'" (Prosser, Torts [4th ed], § 72; 2 Harper and James, Law of Torts, § 26.13; 58 Am Jur, Negligence, § 459.)

In this State, as in others, the joint enterprise doctrine has had its greatest use as a defense in automobile negligence cases (8 NY Jur 2d, Automobiles and Other Vehicles, § 566; Weintraub, The Joint Enterprise Doctrine in Automobile Law, 16 Cornell L Q 320; see, also, *Schron v Staten Island Elec. R.R. Co.,* 16 App Div 111). It has generally been held, however, that the fact that two persons are fellow servants of a common master and are both acting in the course of their master's employment and in furtherance of his business does not make them participants in a joint enterprise (see Restatement, Torts 2d, § 491, Comment *f;* Weintraub, *op. cit.,* p 328, n 35; *McCormack v Nassau Elec. R.R. Co.,* 16 App Div 24, 26; Ann., 8 LRA [NS] 597, 632-635). Although some cases have imposed vicarious liability upon one employee for the negligence of a coemployee where both had an equal right to control the instrumentality which caused the plaintiff's injury (see *Crescent Motor Co. v Stone,* 211 Ala 516; cf. *Hobson v New York Condensed Milk Co.,* 25 App Div 111), the correct rule was stated by this court in *McCormack v Nassau Elec. R.R. Co.* (18 App Div 333, 334), upon a motion for reargument of an order determining an appeal, as follows:

"No question is presented on the argument of this motion that was not considered by the court in originally disposing of the appeal. It is unquestionable that the deceased and the driver of the ice wagon were fellow-servants in the employ of the ice company. We did not discuss the proposition that the mere fact that the deceased and the driver were fellow-servants of a common master made the negligence of the driver attributable to the deceased, for we did not understand that such a point was seriously raised. The proposition can rest on no sound principle, but it is useless to discuss it, for the contrary rule is settled by authority. *(Galvin* v. *The Mayor,* 112 N.Y. 223; *Seaman* v. *Koehler,*

122 N.Y. 646.) We may, however, say this: That as the concurring negligence of a co-servant is no bar to the action of a servant against a master for the latter's negligence *(Cone* v. *D., L. & W. R.R. Co.,* 81 N.Y. 206; *Anthony* v. *Leeret,* 105 id. 591), we do not well see how it can have any greater effect to relieve a third party from liability from wrong.

"The principle in this class of cases of imputed contributory negligence is that at times the negligence of the servant may bar the master's action, for the master is liable for the acts of his servant, but *a servant is not liable for the acts of his master nor for those of his fellow-servant.* He simply takes the risk of the latter. The evidence does not conclusively show that, in addition to their duty to the ice company, the driver and the deceased were engaged in a joint enterprise for the sale and delivery of ice on their own account. The testimony of the driver, construed literally and strictly, would make the deceased, in respect to this business, no more than his (the driver's) servant. The most favorable view that can be taken of the testimony is that it presented a question of fact for the jury to pass upon. This the defendant did not request" (emphasis added).

In other words the *McCormack* case holds that so long as the acts of the coemployees were in the course of the employer's business there will be no vicarious liability, but if the acts in question were committed outside of the business of the master in the private business of the two employees then the law will find a joint enterprise.

The joint enterprise doctrine has been severely criticized (Prosser, Torts [4th ed], § 72, p 481; 2 Harper and James, Law of Torts, § 26.14). Generally liability for negligence should rest only upon a finding of fault unless there is some pressing reason to impose the risk upon some person better able to bear any loss. In any event, the doctrine is based upon analogy to the liability prevailing in cases of partnership, but as discussed *infra,* the Legislature in enacting provisions for the creation of professional corporations did not choose to impose broad vicarious liability upon professionals who so incorporate. To conclude that the defendant doctors who jointly diagnosed and treated the plaintiff could be vicariously liable for the negligence of their coem-

ployees would improperly circumvent that limitation on liability. Such doctors must be considered coemployees engaged jointly upon the business of their employer, the corporation. They are not thereby transformed into joint venturers or partners.

Thus, the common law does not impose vicarious liability upon coemployees even where one is a supervisor, and in this State we have not adopted a rule of vicarious liability in cases where two or more persons are engaged in common efforts other than that existing in partnership or joint venture situations. Neither does the fact that Drs. Hayden and Jonassen were stockholders and officers of the corporation give rise to any vicarious liability. In the absence of constitutional, statutory or charter provisions to the contrary, a stockholder is not merely by reason of his stock interest, liable at common law for any of the obligations of a corporation, whatever their character and in whatever manner incurred *(Freeland v McCullough,* 1 Denio 414, 423, overruled on other grounds *sub nom. Corning v McCullough,* 1 NY 47). However, a stockholder is liable for the torts of a corporation in which he was a participant *(Chess Enterprises v Beldon Assoc.,* 1 AD2d 840). A director, officer or agent is not liable for torts of the corporation or of other officers or agents merely because of his office and he is liable only for torts in which he participated or which he authorized or directed (19 CJS, Corporations, § 845; *Haefeli v Woodrich Eng. Co.,* 255 NY 442; *Howell Mfg. Corp. v Leiblein,* 32 Misc 2d 50, 51).

The remaining question is whether any changes in the foregoing common-law rules were effected by section 1505 of the Business Corporation Law, which states in relevant part:

"§ 1505. Professional relationships and liabilities

"(a) Each shareholder, employee or agent of a professional service corporation shall be personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by him or by any person under his direct supervision and control while rendering professional services on behalf of such corporation."

The purpose of subdivision (a) of section 1505 was to clearly indicate that, by incorporating, a professional could

not insulate himself from personal liability to his clients for injuries sustained due to his own fault. Thus the subdivision states that a shareholder, employee or agent of a professional service corporation is liable for his own negligent or wrongful acts and for those of others only when committed "under his direct supervision and control". In this latter respect the liability is not vicarious but rather merely reflects the common-law rule discussed above, that a supervisor is liable if he directs or permits tortious conduct by those under his supervision or fails to exercise proper control over them (Restatement, Agency 2d, § 358, Comment on subsection [1]). The section does permit professionals, by incorporating, to avoid the vicarious liability to which they would be exposed if they practiced as partners (see McDonald, Business Associations — 1970 Survey of NY Law, 22 Syracuse L Rev 249, 252; cf. Rotgin, The Professional Corporation For Lawyers, 52 NY State Bar J, 634-635).

■ Accordingly, physicians who are coemployees of a professional service corporation and who are charged with malpractice are not "united in interest" for the purpose of CPLR 203 because one cannot be charged with vicarious liability for the acts of the other. In order to recover against both, plaintiff must prove that the fault of each of such defendants combined to cause his injuries. Where such an allegation is made the defendants are joint tort-feasors. As such their defenses could be antagonistic to one another and, therefore, they will not necessarily stand or fail together.

### CONCLUSION

It is our view that the due process considerations underlying the acquisition of jurisdiction over a party can only be vindicated in this case by requiring plaintiffs to serve a supplemental summons upon the corporation thus giving clear notice that plaintiffs intend to seek a judgment against it. Such notice was not given by the summons served upon Dr. Hayden which failed to indicate that plaintiffs sought a judgment against the entity through which the named individual defendants practiced medicine. A slightly different policy consideration underlies the Statute of Limitations, namely a requirement that a defen-

dant receive notice of plaintiff's claim within a reasonable time so that he will have a fair opportunity to prepare an adequate defense. Where, as here, the new party is a corporation which is united in interest with a defendant who was timely served, that policy consideration is satisfied if the plaintiff can prove that the three requirements of the test enunciated in *Brock v Bua* (83 AD2d 61) have been met. In such circumstances the new party is not truly a stranger for purposes of the Statute of Limitations despite the fact that he was not named in the original summons.

Accordingly, the order appealed from should be reversed and defendant Jonassen's motion for summary judgment dismissing plaintiffs' action against him for lack of personal jurisdiction should be granted, with $50 costs and disbursements. On this court's own motion plaintiffs are granted leave to add Charles W. Hayden, M.D. and Ole Thor Jonassen, M.D., P.C. as a party defendant by the service upon it of a supplemental summons and amended complaint.

LAZER, COHALAN and THOMPSON, JJ., concur.

Order of the Supreme Court, Nassau County, dated June 16, 1980, reversed, on the law, with $50 costs and disbursements, Ole Thor Jonassen's motion for summary judgment dismissing the action against him is granted and on the court's own motion plaintiffs are granted leave to add Charles W. Hayden, M.D. and Ole Thor Jonassen, M.D., P.C., as a party defendant by service upon it of a supplemental summons and amended complaint.