HARRY T. WHITLEY, Appellant, v JOHN L. KLAUBER et al., Respondents.

First Department, July 10, 1979

**APPEARANCES OF COUNSEL**

*Richard A. Spellman* of counsel (*Irving Payson Zinbarg* with him on the briefs; *Charles A. Scharf, P. C.,* attorney), for appellant.

*Neal M. Goldman* of counsel (*Stanley Plesent* with him on

the brief; *Squadron, Ellenoff, Plesent & Lehrer,* attorneys), for respondents.

### OPINION OF THE COURT

FEIN, J.

Plaintiff appeals from a judgment entered on an order which denied plaintiff's motion for summary judgment against defendants Daniel T. Alagna, Fania Friedman and Phemie Goldman and granted cross motion by defendants Theodore Lazar, James A. Brunn, Louise Lewis and Lawrence and Morris Fialkow for summary judgment dismissing the complaint. The judgment dismissed the complaint as against 59 defendants listed in a schedule annexed thereto.

This appeal represents the culmination of 10 years of litigation by plaintiff, attempting to recover a finder's fee in connection with the retention of plaintiff by Black Watch Farms, a limited partnership, which had entered into an agreement with plaintiff providing for a commission to be paid for assisting in the sale of the assets of Black Watch Farms. The limited partnership was formed in 1962, essentially as a tax shelter to breed purebred Angus cattle. When originally formed, the partnership had two general partners, B. W. Farms, Inc. (BWF) and Garfield Douglas, and 108 limited partners. BWF, a New York corporation, had a 14% interest in the limited partnership. Douglas was also a shareholder of BWF. The limited partners had a total capital contribution in Black Watch, totaling some $860,000.

In 1968, Black Watch entered into an agreement with plaintiff, whereby the partnership agreed to pay plaintiff a commission if a contract could be concluded for the sale of the partnership assets. The contract listed as one of plaintiff's prospects in connection with such sale, Berman Leasing Company, which later changed its name to Bermec Corporation (Bermec). Bermec, in May, 1968, announced its intention to acquire Black Watch and an agreement was subsequently entered into between Bermec, BWF, Black Watch Farms, Inc. ( Inc.), a wholly owned subsidiary of Bermec which had been formed by Bermec and designated in the agreement as the entity to accept delivery of the assets of Black Watch purchased by Bermec, and Jack Dick, general manager of Black Watch and president and a shareholder of BWF. The transaction, valued at $31 million, included an initial payment to

BWF in the form of Bermec stock valued at $20.5 million, with the balance of $10.5 million to be paid within 30 days to the limited partners in the form of cash or Bermec stock. The limited partners, who held 86% of the interest in Black Watch, eventually received Bermec stock, thereby effecting a transfer of the assets of Black Watch to Bermec, through its wholly owned subsidiary Inc., by exchange of $31 million in Bermec's stock. All the limited partners of Black Watch exchanged their interest in the partnership for Bermec stock. As a result of the acquisition, Inc. became the sole general partner and sole limited partner of Black Watch and distributed all partnership assets to itself.

When plaintiff did not receive the commission alleged to be due in connection with the transaction, he commenced an action in 1968 against Black Watch and BWF as its general partner. After a tortuous legal history, which included entry of two judgments, both of which were vacated, one reversed on appeal by this court (Whitley v Black Watch Farms, 50 AD2d 549), the action was tried before Justice SHELDON LEVY, who awarded judgment to plaintiff in the sum of $1,552,034.50, representing an award to plaintiff in the sum of $993,232.60, with appropriate interest on $571,800 from July 11, 1968 and interest on $421,432.60 from January 31, 1969. Justice LEVY found that BWF was "the only general partner of the limited partnership." An appeal from that judgment was dismissed by order of this court entered November 29, 1977.

During the intervening years, the parties to the agreement relating to the transfer of the assets of Black Watch had been either dissolved, were adjudicated bankrupt or had died. BWF, former corporate general partner of Black Watch, had been rendered a shell, having distributed its assets consisting of the Bermec stock which it received in July, 1968. This distribution, which occurred by the time plaintiff commenced his action against Black Watch, in effect rendered BWF insolvent. Inc., the Bermec subsidiary that acquired the partnership assets, filed bankruptcy under chapter 11 of the Bankruptcy Act (US Code, tit 11) in September, 1970 and was adjudicated a bankrupt. Bermec also filed under chapter 11 in March, 1971. To date, the only recovery which plaintiff obtained on his $1.5 million judgment against the partnership and its general partner, BWF, was the sum of $20,983 which plaintiff received in June, 1977 as a result of a claim which he filed in Inc.'s bankruptcy proceeding. No recovery was realized from

the partnership, since Black Watch was dissolved in August of 1968, several months after the transfer of assets.

As a result, this action was brought in April, 1978 against the limited partners of Black Watch. Plaintiff seeks to recover their respective capital contributions which plaintiff claims were returned to each limited partner as a result of the acquisition of Black Watch by Bermec, through its subsidiary, Inc. Plaintiff, contending that he never received the commission due as a result of his efforts in connection with the transaction which effected a transfer of the partnership assets, moved for partial summary judgment against three of the limited partners named in the action to compel each to turn over the amount which each received as his or her capital contribution, with appropriate interest. Defendants Daniel T. Alagna, James A. Brunn, Louise Lewis, Lawrence Fialkow, Morris Fialkow, Fania Friedman and Phemie Goldman cross-moved to amend their answers and for summary judgment dismissing the complaint. Special Term denied plaintiff's motion and granted the cross motion, finding that the manner by which Bermec acquired ownership of the assets of Black Watch in exchange for Bermec stock was completely without evidence of fraud, thereby precluding plaintiff from any recovery against the limited partners under section 105 (subd [1], par [a]) or subdivision (4) of section 106 of the Partnership Law. In so holding, Special Term found dispositive the fact that the limited partners did not receive a return of their capital contribution from the limited partnership, but rather received Bermec stock for their respective interests directly from Bermec. The court concluded, therefore, that the device used by Bermec to acquire Black Watch, by creating Inc., was not a fraudulent maneuver to avoid the appearance of a return of capital contribution to the limited partners.

■ We disagree. Such considerations as to whether the acquisition of Black Watch by Bermec was with a fraudulent purpose are irrelevant. Plaintiff's entitlement to a finder's fee and the liability of the limited partnership therefor have already been established in the prior litigation between plaintiff and Black Watch and its general partner, BWF. The prior determination of Justice Levy is dispositive as to the merits of plaintiff's claim and is not open for review in this action. In effect, plaintiff, as an unsatisfied judgment creditor, seeks to enforce his judgment against the limited partners to compel them to turn over their respective capital contributions which

they received in connection with the acquisition of the partnership assets by Bermec. Contrary to respondent's assertion on the apppeal, we find insignificant the fact that the limited partners received their original capital contribution by payment directly from a third party in conjunction with that party's acquisition of the assets of the partnership. That the limited partners received a return of their original investment in the form of Bermec stock transferred to them by Bermec, in lieu of formal distribution from the partnership, is not dispositive. Nor does it change the character of the payment to the limited partners. It is patently clear that what the limited partners received as a result of the acquisition of Black Watch by Bermec was a return of their capital contribution. The only real issue tendered for disposition in this action is whether, as against an unsatisfied judgment creditor, the limited partners may retain the return of their investment where such funds are needed to discharge partnership obligations.

To permit the limited partners to retain what to all intents and purposes was a return of their capital contribution in the face of an unsatisfied judgment creditor, would contravene the clear provisions of subdivision (4) of section 106 of the Partnership Law, which provides as follows: "When a contributor has rightfully received the return in whole or in part of the capital of his contribution, he is nevertheless liable to the partnership for any sum, not in excess of such return with interest, necessary to discharge its liabilities to all creditors who extended credit or whose claims arose before such return."

There is no dispute but that plaintiff's claim arose prior to the acquisition of Black Watch by Bermec. As observed, we find the transfer by Bermec of its stock to the limited partners in return for their interest in the limited partnership effected a return to the limited partners of their original capital contributions. Also undisputed is the fact that plaintiff is an unsatisfied judgment creditor and that no recovery may be obtained from the partnership, which was dissolved several months after the acquisition, or from the general partner, BWF, which had subsequently become a mere shell. Both Bermec and its subsidiary, Inc., were adjudicated bankrupts during the pendency of the prior litigation. Under the clear terms of the statute, the liability of the limited partners to the extent that each received a return of capital contribution is plain.

■ Contrary to respondent's assertion, subdivision (4) of section 106 of the Partnership Law does not merely afford a remedy for the violation of subdivision (1) of section 105. The latter section, in paragraph (a) of subdivision (1), precludes a limited partner from receiving from a general partner, any part of his contribution until "[a]ll liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them." Here, the limited partners did not receive their contribution from either the partnership or a general partner. Therefore, section 105 of the Partnership Law on its face, does not apply. However, section 106, which affords an independent remedy, provides for liability of a limited partner to the partnership, where the former receives a return of his contribution and where insufficient partnership funds exist to discharge liabilities owing to creditors who extended credit before the return. Although, under the terms of the statute, the liability of the limited partner runs to the limited partnership, it has been held that creditors succeed to the equity thus established in the partnership (*Kittredge v Langley,* 252 NY 405).

We find *Kittredge v Langley (supra)* dispositive of the issues raised in this action. There, an action in equity was brought by a judgment creditor against a special partner in a limited partnership to recover the extent of his capital contribution which he had withdrawn from the partnership at the time of its dissolution. Plaintiff had previously obtained judgment against one of the general partners and brought this action after having been unsuccessful in recovering against the general partner. Since plaintiff had exhausted his remedies at law, the court held he could pursue an equitable remedy against the special partner, who was required to respond to the extent of his capital contribution which had been withdrawn, despite the fact that the assets left with the general partners at the time were sufficient to discharge outstanding liabilities, but thereafter became inadequate for that purpose. Chief Judge CARDOZO, writing for the unanimous court, observed in this connection (p 419): "The special partner does not relieve himself of liability by withdrawing his contribution. He remains liable as before, though as before his liability is limited. * * * His contribution, like the capital of a corporation and to a similar extent, is to be treated as a trust fund

for the discharge of liabilities * * * He can gain nothing for himself out of the fund so created, except in subordination to the creditors, until the debts have been extinguished."

In response to respondents' assertion that subdivision (4) of section 106 of the Partnership Law does not provide an independent remedy, separate from the statutory provisions contained in section 105 (subd [1], par [a]), the court's observations in *Kittredge* affirmatively establish the independent nature of the remedy afforded by the statutory provisions (p 420): "Even in relation to the partners *inter se,* a special partner may not receive any part of his capital contribution until 'all liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them' (Uniform Limited Partnership Act, § 16, subd. 1-a; New York Partnership Law, § 105, subd. 1-a). This, standing by itself, might seem to justify the contention that the payment might be kept if what was left was then adequate, though inadequate thereafter. The inference is seen to be erroneous when we read the section following. By the next section it is provided that 'when a contributor has rightfully received the return in whole or in part of the capital of his contribution, he is nevertheless liable to the partnership for any sum, not in excess of such return with interest, necessary to discharge its liabilities to all creditors who extended credit or whose claims arose before such return' (Uniform Limited Partnership Act, § 17, subd. 4; New York Partnership Law, § 106, subd. 4). The equity thereby established in favor of the partnership is one to which creditors succeed *(Saunders v. Reilly,* 105 N.Y. 12, 19; *Bulger v. Rosa,* 119 N.Y. 459; *Case v. Beauregard,* 99 U.S. 119, 127)."

■ ■ Nor do we agree with respondents' assertions that plaintiff has failed to exhaust available legal remedies or, in the alternative, that plaintiff's claim is barred either by Statute of Limitations or by application of the doctrine of laches. It is patent that plaintiff in the prior proceeding pursued available remedies against both the partnership and its general partner, BWF. It is undisputed that the judgment thereby procured cannot be satisfied by either. There is no authority for respondents' assertion that plaintiff should have proceeded against Jack Dick and Garfield Douglas as stockholders of BWF. Such a proceeding would require proof sufficient to warrant piercing the corporate veil of BWF. No basis

for such an action appears. Equally without basis is the claim that plaintiff was obligated to proceed against Garfield Douglas as general partner. Douglas had ceded his interest to BWF at all relevant times and as the court found in the underlying action BWF was "the only general partner of the limited partnership." Nor is there any authority to require that the creditor pursue a remedy against Dick as the general manager of the partnership. The statutory provision does not so restrict the liability of limited partners. Nor do we find plaintiff at all precluded by the fact that he pursued his remedy against Inc., by recovering a portion of the amount owing to him in that corporation's bankruptcy proceeding.

■ Respondents contend that the present claim is barred by Statute of Limitations, asserting that plaintiff's cause of action accrued either in August, 1968 when BWF distributed the Bermec stock to the limited partners, or no later than March, 1971, when Bermec filed for reorganization under the bankruptcy laws. However, in order for plaintiff to proceed against the limited partners, it would be necessary for him to establish the unavailability of partnership assets to satisfy his claim. This did not occur until conclusion of the prior litigation against the partnership and its corporate general partner when judgment in that action was entered March 7, 1977 and an appeal from that judgment was dismissed by this court on November 29, 1977. Moreover, the record demonstrates that as early as May 23, 1968, the partnership and, accordingly, its general and limited partners, were given notice that plaintiff demanded payment of commissions alleged to be owing under the terms of the letter agreement with Black Watch. Nor does this record warrant invoking the doctrine of laches. There is no showing of delay as a result of any action by plaintiff nor any change in position or resulting prejudice to defendants.

Special Term erred in granting summary judgment to defendants dismissing the complaint. The limited partners are responsible to plaintiff as an unsatisfied judgment creditor, to the extent that each received a return, in whole or in part, of his or her respective contribution, with appropriate interest (Partnership Law, § 106, subd [4]; *Kittredge v Langley,* 252 NY 405, *supra).* We have determined, therefore, that plaintiff's motion for summary judgment should be granted on the issue of liability and an assessment directed, unless the parties agree upon settlement of the order on this appeal as to the amount of each defendant's contribution.

Accordingly, the judgment, Supreme Court, New York County (HUGHES, J.), entered September 15, 1978, denying plaintiff's motion for summary judgment and granting the cross motion by certain of the defendants for summary judgment dismissing the complaint should be reversed, on the law, with costs and disbursements on the appeal, defendants' cross motion for summary judgment denied and plaintiff's motion for summary judgment as against defendants Daniel T. Alagna, Fania Friedman and Phemie Goldman granted on the issue of liability. Settle order providing for a hearing if necessary to determine the respective amount of each of said defendant's contribution, with appropriate interest.

MURPHY, P. J. (concurring). I agree with the majority opinion except that portion which promulgates liability under subdivision (4) of section 106 of the Partnership Law. I would reverse the judgment upon a different theory.

Black Watch Farms, the limited partnership, was originally capitalized for $1,000,000; the limited partners initially contributed $860,000 of that total amount. When, in 1968, the general and limited partners transferred their interests in the limited partnership for shares of Bermec, the assets of the limited partnership had grown to over $25,000,000. There is no dispute in this record that, at the time of both purchases in 1968, both Bermec and the limited partnership were solvent entities. The evidence indicates that the 1968 purchases were arm's length transactions.

When the limited partners sold their interests to Bermec, no part of their original capital contribution of $860,000 was ever returned to them. The limited partners were merely paid the appreciated market value of their limited partnership interests. The original capital contributions of the limited partners together with all other assets of the limited partnership were eventually transferred through Bermec to its subsidiary, Black Watch Farms, Inc. Since the limited partners did not receive the return of any portion of their capital contribution, liability cannot be predicated against them under subdivision (4) of section 106 and subdivision (7) of section 108 of the Partnership Law.

Section 96 of the Partnership Law provides:

"§ 96. Limited partner not liable to creditors.

"A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and

powers as a limited partner, he takes part in the control of the business; and the exercise of the rights and powers granted by subdivision three of section ninety-nine of this chapter shall not constitute taking part in the control of the business. The commencement of or other participation by a limited partner in an action brought pursuant to section one hundred fifteen-a of this article shall not be deemed to be a taking part in the control of the business within the meaning of this section."

This section is aimed at relieving a limited partner from liability in the day-to-day operation of the limited partnership. However, it was not intended to cover the unique situation presented in this proceeding. The limited partnership entered into the finder's agreement with the plaintiff so that the general and limited partners could transfer their interests to an appropriate purchaser. As Justice LEVY has previously determined, the general and limited partners were only able to transfer their interests to Bermec through the efforts of plaintiff. Since both the general and limited partners directly benefited from the finder's agreement, both should be directly held liable for its breach.

For this reason, I agree that the judgment should be reversed.

KUPFERMAN, LANE and LYNCH, JJ., concur with FEIN, J.; MURPHY, P. J., concurs in an opinion.

Judgment, Supreme Court, New York County, entered on September 15, 1978, reversed, on the law, defendants' cross motion for summary judgment denied and plaintiff's motion for summary judgment as against defendants Daniel T. Alagna, Fania Friedman and Phemie Goldman granted on the issue of liability.

Settle order providing for a hearing if necessary to determine the respective amount of each of said defendant's contribution, with appropriate interest. Appellant shall recover of respondents $75 costs and disbursements of this appeal.