opinion of the court
Bentley Kassal, J.[1]
issue
This is a motion of apparent first impression, raising a unique issue concerning application of the doctrine of “relation back” contained in CPLR 203 (subd [e]). Third-party defendant, Fullan, appearing pro se, moves to interpose an amended third-party answer to assert causes of action sounding in defamation against the plaintiff. The *875 motion, brought more than two and a half years after commencement of both the main action and the third-party action, is made well beyond the one-year Statute of Limitations applicable to actions for defamation (CPLR 215, subd 3). Thus, the claims now sought to be interposed by the third-party defendant against the plaintiff would be time barred, unless the right to assert them has been preserved by the provisions of CPLR 203 (subd [e]). In that respect, the motion also raises a somewhat novel procedural aspect in that the third-party defendant seeks to assert a claim, not against the third-party plaintiff, but against the plaintiff.
FACTS
Plaintiff, parent corporation of Hollingshurst & Co., Inc. (Hollingshurst), brought this action to recover on a commercial blanket bond, No. 751201, issued by Seaboard Surety Company (Seaboard) on April 14, 1971. The bond provides indemnity coverage in the face amount of $100,000 for any loss sustained by the insured as a result of any fraudulent or dishonest act committed by any employee.
The principal action was commenced October 3, 1978. The complaint sets forth two causes of action, each to recover in the sum of $100,000 for the fraudulent and dishonest acts of third-party defendants Kiell and Fullan, employees of Hollingshurst at the time the critical events occurred. In its first cause of action, plaintiff alleges that Kiell had been employed by Hollingshurst as a commodities broker and that, among his duties, was the purchase and sale of commodities for his employer. Kiell is charged with fraud and dishonesty, allegedly acknowledged by him in a statement given to Hollingshurst on March 4, 1977. The fraud alleged includes concealment and falsification of records for more than 90 purchase and sale contracts; dishonestly exceeding authority by speculating in “open positions” beyond permissible limits; concealment of substantial losses from officers and directors of Hollingshurst by misrepresenting the extent of “open positions” and by extracting documents from incoming mail to further conceal the unauthorized transactions.
*876 The second cause of action alleges that, on January 4, 1977, at a time when Kiell was not in the office, Fullan, albeit not authorized to make, contracts or execute orders, fraudulently and dishonestly completed nine purchase and sale agreements and thereafter concealed the transactions from officers of the corporation. As a result of this alleged fraud by both employees, plaintiff seeks indemnity coverage under the bond.
Thereafter, on December 1, 1978, the insurer instituted the third-party action, impleading the two former employees, Kiell and Fullan. On December 8, 1978, Fullan appeared pro se, serving a third-party answer to the third-party complaint, specifically denying the allegations of fraud and dishonesty. Fullan also claims to have served an answer to plaintiff’s complaint on December 15, 1978, although plaintiff denies having received any such answer addressed to the complaint.
THE MOTION FOR LEAVE TO SERVE AN AMENDED ANSWER
Fullan moves for leave to serve an amended answer in the form annexed to the moving papers. The proposed amended pleading reiterates prior denials of any wrongdoing and seeks to interpose four counterclaims against the plaintiff seeking damages for defamation, mental anguish and willful and malicious injury to reputation.
The request for leave to amend was first made orally during a pretrial conference before Honorable Shanley N. Egeth, prior to assignment of this matter to a Trial Part. On the surface, it appeared that the claims sought to be raised would be barred by the one-year Statute of Limitations applicable to actions for defamation if they had been made the subject of an independent suit, newly asserted against the plaintiff. On the other hand, depending upon the applicability of CPLR 203 (subd [e]), the viability of the claims might be preserved were the causes to be interposed as counterclaims in this action, by amendment of the third-party answer. To afford the parties (and the court) a full opportunity to present the legal considerations involved in the issue raised, the third-party defendant was given leave to make formal application for the relief sought.
*877 A. FIRST CAUSE OF ACTION
The first proposed cause of action charges that on October 14, 1977, a letter was sent from plaintiff’s attorney to an attorney for Seaboard, which contained the following false and malicious statements:
“During the course of our investigation we learned, and advised Hollingshurst and its parent company, that not all of the losses previously reported to you by Hollingshurst were caused by the dishonest and fraudulent activities of Harvey Kiell [who was discharged last March], as Hollingshurst originally believed. It now appears that over $100,000 of these losses resulted from dishonest and fraudulent trading by another Hollingshurst employee, Dan Fullan.
“Mr. Fullan recently admitted to us that, on January 4, 1977, he caused Hollingshurst to enter into a number of unauthorized contracts for the purchase and sale of cottonseed meal, and thereafter failed to report these unauthorized contracts to management. Mr. Fullan’s trades were made entirely on his own and without Mr. Kiell’s prior knowledge or consent. Following our discovery of Mr. Fullan’s dishonest and fraudulent activity, his employment with Hollingshurst was terminated.” (Emphasis added.)
B. SECOND CAUSE OF ACTION
The second cause of action seeks to recover for libelous statements contained in plaintiff’s statement of claim, sworn to January 27, 1978, which was submitted to Seaboard in conjunction with plaintiff’s claim under the fidelity bond. The claim made on the policy incorporates the aforesaid letter of October 14, 1977, plaintiff claiming to have sustained actual losses of $106,295.73 “due to Mr. Fullan’s fraudulent and dishonest activities”.
C. THIRD CAUSE OF ACTION
This cause of action, also sounding in libel, seeks recovery for a defamatory letter, dated January 31,1978, sworn to February 1, 1978, from plaintiff’s vice-president to Seaboard’s attorney. The letter purports to amend certain portions of the prior correspondence of October 14, 1977 and the statement of claim of January 27, 1978:
*878 “I am writing this letter to amend a statement in Gerald Novack’s letter to you dated October 14,1977, which letter is incorporated by reference in the formal proof of loss form which we submitted to you yesterday.
“Mr. Novack has advised me that although the statement on page two of his letter to you that Mr. Fullan made certain unauthorized trades on January 4, 1977 is correct, the source of our information is not Mr. Fullan, but rather Harvey Kiell, and his allegations are corroborated, in part, by an examination of the company’s employee records, which indicate that Mr. Kiell was out of the office on January 4th, 1977, the day on which Mr. Fullan made the unauthorized trades.” (Emphasis added.)
D. FOURTH CAUSE OF ACTION
This cause of action, also for libel, concerns an allegedly defamatory letter dated June 19, 1978, from plaintiff’s insurance broker to Seaboard’s attorney, apparently sent after Seaboard had initially rejected the claim. Referring to the original letter of October 14,1977 and the statement of claim thereafter submitted, the broker wrote as follows:
“I believe the principals’ conduct in carrying out their duties was dishonest. They consciously:
“1. Exceeded their authority;
“2. Falsified records to conceal fraudulent trades;
“3. Intercepted incoming mail in order to avoid discovery; and
“4. Misrepresented their ‘positions’ to management.
“The concealed trades were not just beyond their authority but strictly forbidden. They knew it and purposely sought to expand upon their authority in the above-stated manner to the severe detriment of the insured. I believe their acts were dishonest and the resultant loss covered under the bond terms and conditions.”
Fullan alleges that the accusations were false and defamatory and were published wantonly and maliciously and with reckless disregard of his rights. As a result of the publications, he claims to have sustained injury to his reputation in the community and to have suffered great physical pain and mental anguish. He seeks damages in the sum of $300,000 on each of the four causes of action.
*879 DISCUSSION
A motion for leave to amend, made pursuant to CPLR 3025 (subd [b]), vests in the court wide latitude to grant leave “freely * * * upon such terms as may be just”. In passing upon the application, however, the court must consider the underlying merits of the claim sought to be interposed (East Asiatic Co. v Corash, 34 AD2d 432). Of necessity, this requires that disposition be made as to the merits of the defenses raised in opposition.
A. LACHES
Plaintiff suggests that laches should preclude the amendment, since Fullan did not establish any excuse for the delay in moving for leave to amend, either during the period prior to the time the case was noticed for trial, or during the 11-month period that the action was on the Trial Calendar. To the contrary, the moving papers disclose that on May 29, 1981, less than two months prior to the motion for leave, the attorney for Seaboard advised Fullan that Kiell had admitted that, on January 4, 1977, Kiell had spoken with Ed Collins of Cereal By-Products Company, one of the companies to have entered into commodities transactions with Hollingshurst. The conversation was related to the court at a conference held June 3, 1981, whereupon the trial was adjourned to permit an examination before trial of Collins to be taken. The availability of this independent witness affords corroborating proof to support the claim by the third-party defendant that it was Kiell, not Fullan, who had completed the unauthorized commodities transactions on January 4, 1977. The absence of such independent proof, and the very compelling consideration that Fullan has appeared pro se, suffice to explain the failure on his part in seeking leave at an earlier time.
Aside from the foregoing, it is established law that the doctrine of laches exists as an equitable defense, unavailable to operate as a bar to actions at law (Schreier v Cummings, 250 App Div 808; Bohemian Brethren Presbyt. Church v Greek Archdiocesan Cathedral of Holy Trinity, 94 Misc 2d 841, 845-846, affd 70 AD2d 538; see, generally, 36 NY Jur, Limitations and Laches, § 154). The dispositive consideration in such cases is whether the action has been *880 properly commenced within the applicable Statute of Limitations (Galway v Metropolitan El. Ry. Co., 128 NY 132). Accordingly, laches has been consistently held to be legally insufficient as a defense in such actions at law (Appleton v National Park Bank of N. Y., 211 App Div 708, 714, affd 241 NY 561).
Moreover, in this action, there is neither claim nor proof of resulting prejudice to plaintiff as a consequence of any delay on the part of the third-party defendant in moving for leave to amend. Even if the defense were applicable here, which it is not, there is no showing of any required change in position or resulting prejudice to plaintiff (Whitley v Klauber, 69 AD2d 99, 108, affd 51 NY2d 555; 36 NY Jur, Limitations and Laches, § 158).
B. RIGHT OF THIRD-PARTY DEFENDANT TO ASSERT CLAIM AGAINST PLAINTIFF
In opposing the motion, plaintiff questions the procedural posture by which leave to amend is sought, claiming impropriety in Fullan attempting to assert a claim against it when, according to plaintiff, it alleged no cause of action against the third-party defendant. Fullan had previously served a responsive pleading to Seaboard’s third-party complaint, but did not otherwise answer plaintiff’s complaint. Thus, according to plaintiff, since Fullan did not answer the complaint, there is no pleading by Fullan to be amended and no basis for Fullan to assert a claim over.
Plaintiff’s position is wholly lacking in merit. Nevertheless, the factual dispute between these parties is not dis-positive of this procedural issue. As a third-party defendant, Fullan was not obliged to serve an answer to the complaint. He appeared pursuant to CPLR 1008, serving an answer to the third-party complaint. In now seeking leave to amend to assert a counterclaim against the plaintiff, Fullan is merely proceeding according to the statutory scheme, affording a third-party defendant the rights and status of a party adverse to all other parties to the action. CPLR 1008 provides in pertinent part: “The third-party defendant may assert against the plaintiff in his answer any defenses which the third-party plaintiff has to the plaintiff’s claim. The third-party defendant shall have the *881 rights of a party adverse to the other parties in the action, including the right to counter-claim, cross-claim and appeal.” (Emphasis added.)
Plaintiff’s objection misperceives the underlying scope of third-party practice and the relative adverse standing of all the parties following service of a third-party complaint. The statute establishes with clarity the two-pronged right of a third-party defendant to defend not only the third-party action, but also the main action, by raising any defense which could have been asserted against the plaintiff. Thus, a third-party defendant has been held to be afforded the rights of a party adverse to all other parties in the action (622 W. 113th St. Corp. v Chemical Bank N. Y. Trust Co., 52 Misc 2d 444, 447; Mansfield Iron Works v Silveri, 106 NYS2d 496; Jacobs v Driscoll, 78 NYS2d 813; CPLR 1008).
Of necessity, among the panoply of rights afforded to a third-party defendant, as a party adverse to all other parties, is the right to move for leave to amend his pleading in accordance with the standard established by CPLR 3025 (subd [b]). On its part, plaintiff, at any time, had the right to join Fullan as a party defendant (CPLR 1003,3025, subd [b]) and, within 20 days after commencement of the third-party action, plaintiff could have amended its complaint to assert a direct claim against him (CPLR 1009). After that initial 20-day period, plaintiff could have sought similar relief under CPLR 3025 (subd [b]), by application for leave to amend. As an adverse party, the same remedy must be afforded to the third-party defendant, unless such leave which should be “freely given upon such terms as may be just” (CPLR 3025, subd [b]), proves to be unfair and unjust.
C. STATUTE OF LIMITATIONS
The central issue posed by plaintiff, in opposing the motion to amend, is whether the counterclaims sought to be interposed are barred by the applicable one-year Statute of Limitations contained in CPLR 215 (subd 3).
It is conceded that each such claim sounds in libel, subject to the one-year period of limitations pertaining to actions for defamation. Leave to amend in July, 1981, is admittedly sought long after the events in question, in *882 volving alleged defamatory publications in 1977 and 1978, well beyond the applicable one-year period, unless the right to assert the claim has been otherwise preserved under pertinent CPLR provisions.
In this regard, CPLR 203 (subd [e]) provides as follows: “(e) Claim in amended pleading. A claim asserted in an amended pleading is deemed to have been interposed, at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.” (Emphasis added.)
In support of its position, plaintiff relies upon authorities which have held that a cause of action for defamation accrues on publication (Gregoire v Putnam’s Sons, 298 NY 119; Berger v Gilbert, 65 AD2d 882) and which have rejected any tolling of the statute until plaintiff became aware of the defamatory publication (Fleischer v Institute for Research in Hypnosis, 57 AD2d 535). In arguing that CPLR 203 (subd [e]) is inapplicable here, plaintiff points to the bare denials in Fullan’s answer to the third-party complaint as insufficient to give “notice of the transactions” and “occurrences” sought to be raised by the amended pleading. Thus, contends plaintiff, the doctrine of “relation back” does not apply.
The objection, lacking in merit, overlooks the policy which underlies the doctrine of “relation back”. Two recent decisions by the Appellate Division, Second Department, highlight the legislative history and purpose and explain the policy considerations relevant to the application of the doctrine of “relation back” insofar as it concerns the defense of Statute of Limitations. Although the factual situations are quite distinct from that involved here, the learned opinions are most instructive on the issue.
In Brock v Bua (83 AD2d 61), the court, citing its companion decision in Connell v Hayden (83 AD2d 30), reviewed the critical policy considerations relating to the defense of Statute of Limitations: “suffice it to say that the salient reason for limiting the time within which an action may be brought concerns the effect of long time delays *883 upon the availability and reliability of evidence and the consequent prejudice to the fair and accurate determination of factual disputes (see 1 Weinstein-Korn-Miller, NY Civ Prac, par 201.01, p 2-7). Statutes of Limitation were devised ‘to afford protection to defendants against defending stale claims after a reasonable period of time had elapsed during which a person of ordinary diligence would bring an action.’ (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 429.) In short, the Statute of Limitations presumes that a proper investigation and preparation of a defense cannot be undertaken after the expiration of the period of limitation.” (83 AD2d, at pp 63-64.)
CPLR 203 (subd [e]) had been enacted to overcome the Court of Appeals decision in Harriss v Tams (258 NY 229), wherein the court held that, for Statute of Limitations purposes, the inclusion in an amended pleading of a new claim founded upon a different obligation or basis for liability did not relate back to date of service of the original pleading. In Brock {supra, p 64) the court took cognizance of the fact that, as a practical matter, the legislative enactment (CPLR 203, subd [e]) would “necessitate that a defendant now make a comprehensive timely examination of all the facts regarding the transactions, occurrences, or series of transactions or occurrences of which the plaintiff’s complaint gives notice, rather than confining his preparation of a defense to only those facts disclosed in plaintiff’s complaint.”
The Second Department in Brock (supra), nevertheless continued its adherence to prior case law in holding that CPLR 203 (subd [e]) was not applicable to the assertion of a new claim against a new party, since timely notice to the defendant of the transactions or occurrences underlying the claim could not, in and of itself, be imputed to the additional party served beyond the expiration of the statute (see Trybus v Nipark Realty Corp., 26 AD2d 563). To determine the sufficiency of notice to a new party not previously served, and whether Statute of Limitations would be available as a bar, the court adopted the three-pronged standard applicable in the Federal courts (codified by Fed Rules Civ Pro, rule 15, subd [c]): “Pursuant thereto, a claim asserted against a new party will relate back to the *884 date upon which plaintiff’s claim was previously interposed against the original named defendant despite the fact that the former was not named in the process served upon the latter only if (1) both claims arose out of the same conduct, transaction or occurrence (cf. CPLR 203, subd [e]), (2) the new party is ‘united in interest’ with the original defendant, and by reason of that relationship he can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits (see Ann., 11 ALR Fed 269) and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.” (Brock v Bua, supra, p 69.)
In Connell v Hayden (83 AD2d 30, supra) the Second Department followed similar reasoning concerning the rationale and policy underlying the defense of Statute of Limitations (p 41): “It thus appears that the primary purpose of Statutes of Limitation is to relieve defendants of the necessity of investigating and preparing a defense where the action is commenced against them after the expiration of the statutory period because the law presumes that by that time ‘evidence has been lost, memories have faded, and witnesses have disappeared’ (Telegraphers v Railway Express Agency, 321 US 342, 348-349). In such a case the statute is an absolute bar to plaintiff’s action. The united in interest language of CPLR 203 creates an exception to the foregoing rule. Where a defendant is served late, the plaintiff’s claim will nevertheless be deemed interposed against him as of the earlier date upon which a codefendant united in interest with him was timely served and the Statute of Limitations will not constitute a bar to the action. The rationale behind this exception is that where the two defendants are united in interest their defenses will be the same and they will either stand or fall together with respect to plaintiff’s claim. Timely service upon one of two such defendants gives sufficient notice to enable him to investigate all the defenses which are available to both defendants within the period of limitations.”
Applying these principles to the case at bar compels the conclusion that CPLR 203 (subd [e]) is applicable here and *885 that, for purposes of the Statute of Limitations, the defamation claims sought to be interposed in the proposed amended answer by Fullan, the third-party defendant, should relate back to the date the complaint was served. Unlike both Brock and Connell, the within action does not involve an additional claim sought to be added with respect to a person not presently a party to the action. Neither does this case concern “unity of interest” considerations (CPLR 203, subd [b]), one of the issues before the Second Department. Thus, so much of the three-pronged test adopted in Brock as relates to excusable neglect in bringing suit against the additional party has no bearing here.
In determining the applicability of the standard contained in CPLR 203 (subd [e]), the critical consideration is whether the original pleading gave notice of the transaction or occurrence out of which the new claim arose. If so, the additional claim is deemed to relate back and to have been interposed at the time the original pleading was served. Thus, in Caffaro v Trayna (35 NY2d 245), applying the statutory standard contained in CPLR 203 (subd [e]), the court permitted an amendment to a complaint in an action for personal injuries to include therein a cause of action for wrongful death, notwithstanding the fact that the motion to amend was made more than two years after the death of the decedent, beyond the two-year time limitation contained in EPTL 5-4.1 (see, also, Vastola v Maer, 39 NY2d 1019).
On the facts of this case, the pertinent consideration is the time when the complaint was served and not when the answer to the third-party complaint was interposed, as plaintiff contends. The defamation claims sought to be pleaded by Fullan, albeit not the same as plaintiff’s claim, arose out of the same series of transactions or occurrences involved in the insured’s attempt to recover on its fidelity insurance and are directly related thereto. In fact, they are at the heart of the claim made by plaintiff under the policy. Each defamatory utterance was made in either a letter demanding coverage under the policy, a statement of claim or proof of loss submitted thereunder, or a letter sent by the broker on plaintiff’s behalf, apparently after the claim had been initially rejected.
*886 Since no new parties are sought to be added, there is no issue as to whether any such additional party had such notice of the transaction or occurrence. It is patently clear that plaintiff had notice, as well as direct knowledge of the series of transactions or occurrences out of which the libel claims arose, since plaintiff was the actor creating the publications alleged to be defamatory and making them the basis of its claim for fidelity coverage in its action on the policy.
In concluding that, for purposes of Statute of Limitations, the libel claims sought to be interposed do relate back to the date plaintiff instituted suit, the court is not unmindful of the policy considerations discussed by the Court of Appeals in Caffaro (supra) and by the Appellate Division in both Brock and Connell (supra). The decision here adheres to those basic policy considerations. Statutes of Limitations reflect a legislative awareness of the need tó balance competing policy considerations under which there comes a time “after which fairness demands that a defendant should not be harried”, with the “fairness to the claimant that he shall not unreasonably be deprived of his right to assert his claim” (Caffaro v Trayna, 35 NY2d, at p 250, supra). Statutes of Limitations are designed to protect parties against defending stale claims after the passage of a reasonable period of time during which the hypothetical reasonable man of ordinary diligence might have been expected to have instituted suit. The statute presumes the expiration of a sufficient time to conduct a proper investigation and prepare a defense to the action. However, CPLR 203 [subd [e]) is a legislative recognition that such presumption is rebuttable in an appropriate fact pattern.
As applied here, plaintiff knew when it issued the letters and statement of claim, containing allegations of fraud and misconduct on the part of the third-party defendant, that their publication was susceptible to a claim for defamation. Obviously, plaintiff had to make an in-depth investigation to prove its case against its insurance carrier. Thus, any investigation with reference to any potential defense could have and should have been conducted before the publications were issued.
*887 Accordingly, I conclude that CPLR 203 (subd [e]) applies with respect to the counterclaims alleged in the proposed answer to the third-party complaint. Under the statute, I find that the claims by Fullan directed against plaintiff, relate back to the service of the complaint. The one-year Statute of Limitations (CPLR 215, subd 3) is, therefore, unavailable as a defense.[2]
Furthermore, there is a public policy factor to be considered in conjunction with the issue of timeliness, namely, these counterclaims are still viable and not time barred since they are available to third-party defendant Fullan as a setoff under CPLR 203 (subd [c]), which provides in part as follows: “A defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed.”
D. QUALIFIED PRIVILEGE
In addition to the defense of Statute of Limitations, plaintiff further objects to the amendment upon the ground that each of the publications relied upon was submitted in conjunction with plaintiff’s claim for coverage under the bond and, as a result, a qualified privilege exists which cannot be overcome except by proof of actual malice (Shapiro v Health Ins. Plan of Greater N. Y., 7 NY2d 56).
*888 In opposing the motion, plaintiff does not challenge the defamatory nature of the publications. Unquestionably, the letters and the statement of claim, charging Fullan with specified acts of misconduct and fraud, were defamatory. The charges went far beyond a mere accusation that he had acted in excess of his authority, accusing him of dishonesty and fraud in falsifying records to conceal the fraud, interception of incoming mail, and misrepresentations to officers of the corporation. To the extent that the charges affected Fullan in the conduct of his business, they would constitute libel per se.
Nevertheless, since the communications were made in conjunction with plaintiff’s claim under its fidelity coverage, a matter in which plaintiff had a definite interest and a corresponding duty, the statements were qualifiedly or presumptively privileged. Thus, under the standard expressed in Shapiro (supra), it was incumbent upon Fullan to plead and prove that the publication was made with actual malice, that is, with knowledge that it was false or in reckless disregard as to whether it was false or not.
As applied here, the proposed amended answer alleges actual malice on the part of the plaintiff. It is further alleged that the publication injured Fullan in his reputation and standing in the community, subjecting him to great pain and mental anguish. Should sufficient proof of malice be shown, damages for actual injury suffered, including impairment of reputation, personal humiliation and mental anguish and suffering may be recovered (Gertz v Robert Welch, Inc., 418 US 323, 349; Salomone v MacMillan Pub. Co., 77 AD2d 501, 502).
In Salomone (supra), the Appellate Division, First Department, held mental anguish to be compensable only when concomitant with loss of reputation (see, also, Dazzo v Meyers, 83 AD2d 14, 21; France v St. Clare’s Hosp. & Health Center, 82 AD2d 1, 6). At this stage in the litigation, however, it is premature to speculate whether or not Fullan will be able to sufficiently establish actual damage through loss of reputation which, under the reported decisions, may not be presumed. The proposed amended pleading has not yet been served and the parties have been afforded no discovery whatsoever, nor other opportunity to *889 inquire. No claim is advanced by plaintiff of insufficiency in the pleaded allegations due to the absence of resulting harm or injury. Rather, plaintiff claims that the pleading does not set forth specific facts to support a finding of actual malice. To the contrary, the proposed amended pleading states with specificity the circumstances leading to the publication of the defamatory utterances, alleging that plaintiff had no basis upon which to issue the statements; that the publication was wanton and reckless, made with total disregard as to whether the accusations were true or false; and that plaintiff knew or should have known that the matter so published was false.
Of significance is that the court is here confronted with a motion for leave to amend pursuant to CPLR 3025 (subd [b]), not a motion for summary disposition under CPLR 3212, or a motion to dismiss converted to one for summary relief (CPLR 3211, subd [c]). Where a motion to dismiss has been made, which has not been converted to one for summary judgment under CPLR 3211 (subd [c]), the court is limited to considering the allegations on the face of the complaint, supplemented by submissions offered to remedy any defect therein, with the allegations to be construed liberally, so as to give them the benefit of the most favorable intendment (see Rovello v Orofino Realty Co., 40 NY2d 633; Arrington v New York Times Co., 55 NY2d 433; Silsdorfv Levine, 85 AD2d 297). A party’s burden on such a motion is not at all akin to that where summary relief is sought. Similarly, the evidentiary burden imposed upon a party seeking leave to amend is not as stringent as on an application for summary judgment (Cushman & Wakefield v John David, Inc., 25 AD2d 133, 135), albeit the prevailing principle in this department requires that the court consider the merits of the claim sought to be interposed (East Asiatic Co. v Corash, 34 AD2d 432, supra). This, however, does not require a full factual submission by movant to the extent necessary on an application for summary relief.
Under the facts and circumstances of this case, again taking into account Fullan’s pro se status, and giving the benefit of every favorable inference to the pleading challenged on the motion (Rovello v Orofino Realty Co., supra, p *890 634; Matter of Brathwaite v Manhattan Children’s Psychiatric Center, 70 AD2d 810), I conclude that the proposed amended pleading set forth cognizable claims for relief and is legally sufficient (Foley v D’Agostino, 21 AD2d 60).
CONCLUSION
Accordingly, the motion by the third-party defendant, pursuant to CPLR 3025 (subd [b]) for leave to serve an amended answer to the third-party complaint, containing counterclaims against the plaintiff sounding in defamation, is granted.
The amended answer in the form annexed to the moving papers shall be served upon the attorneys for plaintiff and defendant third-party plaintiff within 20 days after service of a copy of this order with notice of entry. Plaintiff’s answer to the counterclaims shall be served within 20 days from the date of such service. The parties are directed to serve a copy of this order with notice of entry upon the clerk of Trial Term, Part 11, so that the action may be restored to its appropriate place on the calendar of that part for trial.

. Assigned to Justice Kassal by order of Administrative Judge Edward R. Dudley, June 4, 1982.

. Three of the four counterclaims (second, third and fourth) allege defamatory publications made within one year from the date of both the complaint and the third-party complaint. The first counterclaim, concerning the letter of October 14, 1977, alleges a publication more than one year from the date plaintiff’s complaint was served. That counterclaim, therefore, would be barred by the applicable limitations period, even under the “relation back” standard of CPLR 203 (subd [e]). However, the contents of the October 14, 1977 letter were specifically incorporated within the statement of claim dated January 27, 1978 (second counterclaim) and the letter of January 31, 1978, amending both the October, 1977 letter and the January, 1978 notice of claim (third counterclaim). These republications of the defamatory utterances contained in the October 14, 1977 letter are sufficient to sustain the viability of the first counterclaim, republished less than a year from the institution of suit.